LEVI B. CLARK, Respondent, *v.* MARTIN HAMMERLE, Appellant.

1. *Lands and Land Titles—Confirmation—Evidence.*—Certified copies from the registry of claims proved before the Recorder of land titles under the act of Congress of May 26, 1824, or from the registry of certificates of confirmation or list of claims are proved, or of official survey by the Surveyor General of the lots so proved, or a certificate of confirmation issued by the Recorder of land titles upon such survey, are admissible in evidence as *prima facie* evidence of title to the lot confirmed.

2. *Confirmation—Survey.*—A lot was claimed and confirmed by the Recorder of land titles, as a lot of one and a half arpens in front " by about thirty arpens in depth," bounded north by Guion, south by Tabeau, east by Aug. Chouteau's mill tract, and west by Charles Gratiot. The lot was officially surveyed in accordance with the calls for boundaries, rejecting the call for quantity of " about thirty arpens in depth." *Held*—That this was the correct mode of surveying the lot proved, and that the certificate of confirmation issued properly conformed to the official survey so made.

3. *Ejectment—New Madrid Location.*—A defendant claiming title under a New Madrid location is in a position to dispute the correctness and validity of a *prima facie* superior title of the plaintiff under a confirmation by the act of June 13, 1812.

4. *Land Titles—Abandonment.*—The Spanish law of abandonment continued in force in this State until A. D. 1816. To constitute an abandonment, there must be a departure of the owner, corporeally, from the land, with the intention that it shall be no longer his. The intention to abandon may be inferred from facts and circumstances. Ceasing to cultivate, mere inaction, removal to another place, is not enough without some act of disclaimer, or act showing an intention to disclaim ownership.

*Appeal from St. Louis Land Court.*

This case was before the court in 27 Mo. 55. On the trial of the case below, the plaintiff gave in evidence: ·

" 1. Copy of registry of claim from Hunt's Minutes, *page* 116, in the name of ' *Joachim's Roy's legal representatives,*'

for a lot in *cul de sac* of one and a half arpens '*by about thirty* *in depth*,' bounded north by Guion, south by Tabeau, east by Auguste Chouteau's mill tract, and west by Charles Gratiot.

" 2. Copy of registry of certificate of confirmation, dated July 30, 1825, in favor of 'Joachim Roy's' legal representatives, for common field lot in *cul de sac*, of one and a half arpens ' by about thirty deep,' by virtue of

" 3. A will of Joachim Roy, March 28, 1789, devising all of his estate to Veronique Guitard, and copy of the same.

" 4. United States private survey No. 3307, for Joachim Roy's legal representatives under the above claim and registry of confirmation, and which covered the premises in dispute.

" 5. Certificate of burial of said Roy, June 25, 1801.

" 6. Certificate of burial of V. Guitard, December 8,1808.

" 7. Will of V. Guitard, August 19, 1808, whereby, after devising some personal property to others, she ordains that 'the remainder of the properties that she shall leave after her death shall be equally divided between her two other children, François Cayoux and Eustache Cayoux, the said children to enjoy the same.'

" 8. Deed of said François and Eustache Cayoux to William Carr Lane, August 1, 1825, for said lot.

" 9. The defendant admitted that Veronique Guitard first married one Cayoux and had four children by that marriage, viz., Francis, Eustache, Louis, and Josette; that said Cayoux died, and his widow married Joachim Roy ; that said Roy died, leaving his widow, but no children by her ; that all the title held by Lane was vested in the plaintiff, and that defendant was in possession of the premises at the time alleged.

" 10. A certificate of confirmation issued March 24, 1857, by Renard, Recorder of land titles, under the claim of Roy's representatives, as above set forth, and being in favor of said representatives."—This was objected to as incompetent; it was after the suit was commenced, and it was issued without authority. Objections overruled and exceptions taken.

The appellant (defendant below) gave the following evidence:

"1. Letter of William Carr Lane to ' Gen. Milburn, Surveyor,' &c., dated June 20, 1840, and while Lane was owner of the title now held by plaintiff. In this letter he says, ' I assert of my *own certain knowledge*, that the proof taken before the Recorder—No. 2, page 116—called for 40 *arpents*, instead of about *thirty*, before *the record was altered.* I have now in my possession two copies of these entries upon the Recorder's Minutes, made *before the erasure of the claimant's name and the word forty, and of the subsequent interlineations of another name and of the word thirty.*' He refers frequently to pages 49 & 50 to prove that the lot was forty arpens deep, and asserts that the positive testimony on these pages ought not to be overruled by the ' *questionable testimony* at *p.* 116.' The underscoring is from the original letter.

" 2. The claim of Joachim Roy's legal representatives for a lot containing one arpent and a half by about forty in depth, bounded north by the field lot formerly owned by Madame Lecompte, east by the claim of widow Camp's legal representatives, south by a field lot formerly owned by Tabeau, and west by land unknown, near to Gratiot's. (From Hunt's Minutes, p. 49.)

" 3. Registry of certificate of confirmation, dated July 30, 1825, in favor of Joachim Roy's representatives, for a lot of one and a half arpens front by about thirty deep, bounded north by Guion's legal representatives, south by Tabeau's legal representatives, east by Auguste Chouteau's mill tract, west by claim of Charles Gratiot."

These two documents the court admitted.

" 4. The same claim and certificate, with the depositions of Francis Cayoux and Eustache Cayoux thereto annexed, as follows:

" ' Francis Cayoux, being duly sworn, says that he knows the field lot claimed, and that this deponent, forty years ago, with Joachim Roy, cultivated this field lot, and continued to cultivate the same with said Roy until the fence was taken

down about twenty-five or twenty-six years ago. This deponent says that his mother, after the death of his father, married Joachim Roy, and in that way living with Roy he became acquainted with this field lot. He has no interest in this claim whatever.

FRANCIS CAYOUX. his mark.

'Sworn to before me, July 7, 1825.

  ' *Theodore Hunt*, Recorder L. T.'

" 'Eustache Cayoux, being duly sworn, says that he knows the field lot claimed, and that upwards of thirty years this lot was owned and cultivated by Joachim Roy, who cultivated the same until the fence was taken down; and this deponent further says he has no interest whatever in the field lot, neither directly nor indirectly.

EUSTACHE CAYOUX. his mark.

'Sworn to before me, July 7, 1825.

  ' *Theodore Hunt*, Recorder L. T.'

  " (See Hunt's Minutes, pp. 49–50.)"

The plaintiff objected to the admission of the depositions as incompetent, and the court sustained the objections and excluded the same, to which the defendant excepted.

" 5. The claim and certificate of confirmation of A. Guion's legal representatives for a lot in the *cul de sac*, dated July 30, 1825, calling for "cadet Jean Rion" as its southern boundary.

" 6. Claim and registry of confirmation of Tabeau's legal representatives, dated 10th August, 1825, in same common field, calling for lot ' claimed by Jean Rion's legal representatives' as its northern boundary.

" 7. Concession to Cottard of one by forty arpens, taken from (i. e. commencing at) ' *trait carré*,' meaning the west line of the common field fence and in *cul de sac*.

" 8. Survey of same showing that this concession to Cottard was wholly east of the premises in dispute.

" 9. Claim of widow Camp and confirmation by the old Board. This claim is north of Chouteau's mill tract. The

premises in dispute only touch the S.W. corner of the mill tract.

" 10. Plat of Chouteau's mill tract in 1803, showing that it was bounded on the west by ' *vacant lands.*'

"11. Admission of counsel that New Madrid certificate was located so as to cover the premises in dispute in 1818, surveyed by the United States and patent certificate issued, and that this title is vested in defendant.

" 12. Adolph Renard, Recorder of land titles, testified that he had been in the Recorder's office since 1836, and had been Recorder since 1847 ; that the annotation on Guion's claim ' in Chouteau mill tract,' was in the handwriting of Hunt ; he believed the entries on pp. 49 and 116 of Hunt's Minutes in regard to the Roy claim, and mutually referring to each other as one and the same claim, were also in Hunt's handwriting."

The defendant then offered to prove by him that these annotations had always, since he had been Recorder, been treated by him in his office as a part of the record, and were so considered.

· The court, on plaintiff's objection, excluded this testimony, and defendant excepted.

Witness testified that a portion of the *cul de sac*, as at present surveyed, was embraced within the Chouteau mill tract; but he knew nothing of this personally. He gathered all his information from records in his office.

The defendant then offered the claims of Guion, with the annotations ; also the claim of Roy with the annotations ; both of which the court excluded, and he excepted.

The defendant also offered the claim of Roy as contained on page 116, with the erasures and without the annotations, which the court excluded.

The defendant then introduced John B. Pourcelli, who testified that the *cul de sac* common field was embraced within the western part of Chouteau's mill tract, and did not embrace the premises in dispute. One or two other witnesses testified to the same thing.

The court then gave the following instructions for the plaintiff, to the giving of which the defendant excepted :

No. 1. The certified copy of the registry of confirmations, read in evidence, is *prima facie* proof that Joachim Roy inhabited, cultivated or possessed the land therein described prior to the 20th day of December, 1803.

No. 2. The survey made by the Government of the United States of the tract of land confirmed to Joachim Roy, or his legal representatives, is *prima fiacie* evidence of the true location of the land so confirmed. And if the jury find from the evidence that the premises sued for in this case are within said survey No. 3307—if the respective wills of Joachim Roy and Veronique Guitard, and the deeds read in evidence by the plaintiff, are genuine, then the plaintiff is entitled to recover in this action, unless the jury should find from the evidence that Joachim Roy, prior to the 20th December, 1803, abandoned his possession and claim of the said premises, or that the lot which he actually cultivated and claimed in the *cul de sac common fields* is not the same that is claimed in part by the plaintiff in this suit.

No. 3. Abandonment of a lot or tract of land is the voluntary relinquishment of the former proprietor of all right or pretence of claim thereto, and such abandonment may be proved by facts and circumstances. And in the case under consideration if the jury find that Joachim Roy, prior to the 20th December, 1803, cultivated, inhabited or possessed the land in question ; before the jury can find that he abandoned the said land, the jury should be satisfied from all the facts and circumstances given in evidence in this case that said Roy voluntarily relinquished all right or pretence of claim to said land. Although the jury may find from the evidence that Joachim Roy, prior to the 20th December, 1803, ceased to cultivate the land in question, that fact of itself is not sufficient to prove that he abandoned his claim to said land.

No. 4. If the jury find for the plaintiff, they should assess his damages at the yearly value of the rents and profits of

the premises in question from the 17th day of September, 1856, and should also fix the monthly value of such rents and profits at this time.

The defendant then asked the following instructions, which the court refused to give, and the defendant excepted thereto:

No. 1. The evidence of right to the land in question, as shown in the confirmation and surveys given in evidence on the part of the plaintiff, is *inferior* to the evidence of right to the said land as shown by the defendant in his testimony given to the jury in this case.

No. 2. If the jury believe from the evidence that Joachim Roy and his representatives abandoned the possession of the land which said Roy cultivated before 1803, and all the right and title which said Roy had to the same, the plaintiff ought not to recover in this action.

No. 3. If Joachim Roy cultivated a part of the lot in question before the 20th of December, 1803, without having any right, title or claim thereto but such as the law imputed to him on account of such cultivation; if several years before 1803 he ceased to cultivate, and never afterwards cultivated or possessed the same, or asserted any claim to the same as owner; if he died in 1801, and no person claiming to represent his rights did ever inhabit, cultivate or possess the same, (or assert any claim to the same as owner,) these facts are strong evidence of abandonment, and the jury will be well warranted in finding that the plaintiff has no title to the land in question, as derived from the said Joachim Roy.

No. 4. If the jury find that cadet Jean Rion, or his representatives, claimed before the Recorder of land titles the land now embraced in the United States survey No. 3307, in order to make proof and get a certificate of confirmation therefor, under the act of Congress of May 26, 1824; that the Recorder entered the claim on his record in the name of Rion, and made a certificate of confirmation in the name of Rion, and that subsequently the name of Rion was erased and the

name of Roy inserted in lieu thereof, such alteration of the record and certificate (both or either of them) was without authority and unlawful, and the said Roy or his representatives got no title thereby.

No. 5. The plaintiff claims under one Joachim Roy, in virtue of a confirmation to said Roy or his legal representatives, of the title to a common field in, adjoining or belonging to the town of St. Louis, by force of the act of Congress of June 13, 1812, and the court instructs the jury that that act of Congress gave no title to the said Roy or his representatives to the said field lot, unless over and above the fact that said Roy cultivated part of the land prior to the 20th of December, 1803; it also appears in proof that the said Roy had some right, title or claim to the said land prior to the 20th December, 1803, and that such right, title or claim continued and was in existence on the 13th of June, 1812.

No. 6. Prior to the 20th of December, 1803, the bare fact that Joachim Roy cultivated a portion of land near the town of St. Louis, did not make the said land a common field lot; and if it were in fact a common field lot, the bare fact of its cultivation by Roy did not give to the said Roy any right, title or claim to the said lot as against the Government of Spain, France or the United States.

No. 7. The act of Congress of May 26, 1824, is the only law which empowered the Recorder of land titles to issue certificates of confirmation of lots the titles to which were confirmed by the act of June 13, 1812. And if the jury find that the Recorder did on the 30th July, 1825, (or at any time within eighteen months after the passage of the said act of 1824,) issue a certificate of confirmation for the lot now in question to said Roy, or his representatives, that certificate is the evidence of title in said Roy or his representatives provided by the act of Congress, and the plaintiff, in so far as he claims a part of said lot under said Roy, ought to produce the said certificate in evidence as a legal muniment of his title. 1. If such a certificate were issued by the Recorder,

he thereby exhausted his power in that respect under the statute, and had no power to issue another and different certificate to the same party for the same lot in 1857. 2. The certificate of confirmation given in evidence is illegal and void, being without any authority of law. 3. The certificate of confirmation given in evidence is defective and does not conform to the act of Congress of May 26, 1824, which is the only law which authorized the Recorder to issue any such certificate. 4. In proceeding under the act of Congress of May 26, 1824, the Recorder acted judicially ; he had power under the act, for eighteen months after its passage, to take the proofs offered by the claimant of " the fact of inhabitation," cultivation or possession, (of the lot,) together with its extent and boundaries"; and having taken such proofs, if they were satisfactory to him, it was his duty then to issue a certificate of confirmation, setting forth the extent and boundaries of the lot, as proven before him in 1825 ; and, in issuing a certificate in 1857, he had no lawful power to set forth the extent and boundaries of the lot by a survey then recently made, instead of the testimony lawfully taken before him long before the survey was made.

*Gibson*, for appellant.

The second instruction given for the plaintiff put the case to the jury on a basis too narrow. It excludes from their consideration the alteration of the record. It excludes from the jury any question as to whether the representatives of Roy (who was buried in 1801, two years before the treaty) abandoned the premises. It excludes all consideration of the question whether Roy or his representatives continued to claim the premises up to 13th June, 1812.

It is obvious that the act of 13th June, 1812, did not grant lands to persons who did not at that time " claim " the land.

The certificate is *prima facie* proof of the possession, &c., prior to 1803, and of the claim on the 13th June, 1812 ; but the defendant still had the right to insist before the jury that

Clark v. Hammerle.

Roy's representatives ceased to claim this land prior to 13th June, 1812. (City of St. Louis v. Toney, 21 Mo. 254.)

The omission to put the question of abandonment to the jury so as to include Roy's representatives was not accidental. The second instruction asked by the defendant and refused by the court was framed so as to meet this defect. The omission cannot therefore be said to be either accidental or immaterial.

The third instruction given for the plaintiff is erroneous :

1. It tells the jury, first, what abandonment is, and, in attempting to define abandonment, it says it is the voluntary relinquishment of the *former* proprietor of all right, &c. It should have said the proprietor, and not the *former* proprietor. This adjective has a meaning when coupled with the concluding portion of the instruction which again confines the question of abandonment to Roy and excludes his representatives.

2. To tell the jury that the cessation of cultivation by Roy, (again excluding his representatives,) prior to 1803, was not of itself sufficient to prove that he abandoned his claim, was calculated to mislead the jury, and was erroneous. If the court could tell the jury that ceasing to cultivate the premises was of itself no proof of abandonment, it might with equal propriety say that ceasing to inhabit the premises was no proof of abandonment, and that ceasing to possess the premises was not of itself sufficient proof thereof.

Where a question is to be determined by the jury from " facts and circumstances," it is wrong for the court to select one of the " facts or circumstances " and tell the jury that that is not sufficient proof. On this principle the whole case could be taken from the jury. There was no evidence that Roy ever inhabited or possessed the land otherwise than by cultivation. His cultivation of the premises was the only foundation of his " claim."

The first instruction requires the jury to find for the plaintiff, unless they find that Roy abandoned the premises, or that the lot he claimed and cultivated did not embrace the

premises in dispute. The other instructions narrow this question still more by telling the jury what abandonment is, and by nullifying the effect of the ceasing to cultivate the premises; and the instructions are all so worded as to exclude from the jury the action, or rather the non-action of Roy's representatives, from the time of his death, and also all question as to non-claim subsequent to 1803.

"It is clear that if a claim was abandoned it had no existence at the date of the act, and could not, therefore, be confirmed." (City of St. Louis v. Toney, 21 Mo. 254.) "If the inchoate right, commencing under the Spanish Government, continued in existence until the act of 1812, it was confirmed." (*Ibid.*)

The refusal to give the second instruction was erroneous.

The non-claim of Roy's representatives for more than twenty years subsequent to 20th December, 1803, was competent evidence tending to prove abandonment prior to that date.

Roy had no inchoate title. He cultivated a common field in the *cul de sac*, and when the common field fence, *trait carré*, fell down, he ceased to cultivate it. This fence fell down several years prior to 1803. No claim or possession of any kind was made from that time until 1825, a period of nearly thirty years, when Eustache and François Cayoux, who then owned the "claim" if any one did, appeared before the Recorder and testified that they had no interest in the premises. All these facts should have been permitted to have their due weight before the jury on the question of abandonment.

The court erred in refusing the defendant's fourth instruction.

It is not shown by whom these erasures and interlineations were made. No note or other memorandum whatever exists to show that they were made (by the Recorder or any one else in office under the Government). It is proven by Lane in his letter that they were made long after a certificate had been issued upon the entry as originally made.

The only evidence of a confirmation to Roy's representa-

tives under the act of 13th June, 1812, is the legal presumption arising from the copy of the registry of confirmation of 1825 by Hunt, and the certificate of confirmation issued in 1857, after this suit was brought. It is not denied that a confirmation under or by the act of 1812 is superior to a New Madrid location, nor that such confirmation may be proved orally at the present time; nor that the registry of confirmation of 1825, or the certificate thereof of 1857, is good against the Government and all claiming under it subsequent thereto. But it is admitted that this land had been appropriated in satisfaction of the New Madrid location certificate in 1818, six years before the passage of act of 26th May, 1824. This was an exchange of this land for the improved land in New Madrid. (See authorities cited by defendant in Holmes v. Strautman.) Its officers could not subsequently admit away the title thus granted. Their certificates cannot affect its prior grantee, any more than the certificate or admission of the assignor of a bond subsequent to the assignment that he had previously assigned it to a third person can avail against his assignment. (Soulard v. Clark, 19 Mo. 581.)

The owner of the New Madrid location was no party to the proceedings before the Recorder. There was not at that time any record showing a claim to this land, nor .any possession or visible indication of a claim, so as to warn the locator of the New Madrid certificate.

The court erred in excluding the annotations of Recorder Hunt on the margin of the two confirmations from pages 49 and 50 and page 116, mutually referring to each other as being one and the same " claim."

The court below erred in excluding the depositions of Francis and Eustache Cayoux. It is not pretended that Roy claimed or ever cultivated or possessed more than one lot in the *cul de sac*.

There is no question that the representatives of Roy appeared before the Recorder and claimed the lot as described on pages 49–50. It is equally clear that these two Cayoux were then the sole representatives of Roy, and that they testified that

*that* was the lot Roy cultivated. This claim and the depositions were made under and in pursuance of the " duty " imposed on them to " designate " the lot, and the " boundaries," and " extent " of the same. In other words, it was their duty to locate the lot by " designation, boundaries and extent," by " proof." These depositions are the " proof."

These depositions are admissible for " some purposes." (Clark v. Hammerle, 27 Mo. 55 ; City of St. Louis v. Toney, 21 Mo. 254.) There is no question of their authenticity. They were objected to on the ground of incompetency only. The question therefore arises as to what effect shall be given to them : First, as testimony taken by the Recorder in performance of his duties under the act of 26th May, 1824, and preserved as a part of the records in his office ; second, as the admission, or rather, the stronger case, of the most solemn asseveration or affirmation of the owner at the time ; and whether he and those claiming under him are estopped thereby. (City of St. Louis v. Toney, 21 Mo. 256 ; Clark v. Hammerle, 27 Mo. 55.)

As to the second point—1. A party is estopped to deny his own acts which influence another. (Bank v. Wollaston, 3 Harr. 90 ; Hicks v. Crain, 17 Ver. 499 ; Rongely v. Spring, 8 Shep. 130.) 2. These Cayoux were parties, owners and claimants. These depositions were made in the performance of the duty imposed on them by law, and the Recorder acted judicially in determining the validity of their claim. They are therefore admissible as the—1. " Solemn admissions " of the parties. (1 Green. § 27–169) ; 2. As the declarations of the parties in interest (*ibid.* § 27–169); 3. As judicial admissions. (*Ibid.* § 216).

The court erred in excluding the report of the Surveyor General to the Commissioner of the General Land Office of 19th August, 1852. Neither the act of 1812 nor 1824 makes provision for the survey of private claims, except for the purpose of separating them from school or vacant lands, and a question has been raised whether such surveys are evidence at all except between the Government and the claimants.

But the court below admitted a survey made in March, 1857, after the commencement of this suit. Now, what was this survey but an official act of the Surveyor General, declaring where this confirmation ought to be located according to the records in his office? Is it not competent to rebut this action of the Surveyor General by the records themselves? This report is an official act of the highest moment, for it is made for the use of the immediate superior of the office, and is prior in point of time to the survey under which the plaintiff claims.

The case stands briefly thus: In 1852 the Surveyor General declares officially that the *cul de sac* common field does not cover the premises in dispute, and in 1857 the Surveyor General declares that it does; and the question being open to the jury, the court admits the one for the plaintiff and excludes the other for defendant.

All the records in the Surveyor General's office relating to the survey and location of the lot, and of course those relating to the locality of the *cul de sac* common field, of which it was a part, are admissible.

*Krum & Decker*, for respondent.

I. The instructions given by the court below, at the instance of the plaintiff, in respect to the questions of inhabitation, abandonment, location, and the plaintiff's title to the premises in dispute, assert correct rules of law. The vital questions of fact involved in the case were fairly submitted to the jury under proper instructions, and the jury having responded to the issues, this court will not disturb their verdict.

II. The first instruction asked by the defendant (and refused) is clearly erroneous, because it withdraws the questions of fact to which it is directed wholly from the consideration of the jury.

III. The second instruction asked by defendant (and refused) is directed to the question of abandonment. The

court had already correctly and fully instructed the jury as to what constituted abandonment in the sense of the law, and also that if possession and claim had been abandoned by Roy or his legal representatitives, the plaintiff could not recover.

The second and third instructions given at the instance of the plaintiff cover these points fully, and the law as laid down in those instructions has been the rule of this court in numerous cases. The court below having ruled on the same point, there was no necessity of repeating the rule by giving the second instruction. There was no error, therefore, in giving this instruction.

IV. There are two objections to the third instruction refused by the court below:

1. It is a commentary on the evidence; and,

2. It virtually asserts that possession and cultivation prior to December 20th, 1803, are of no avail under the act of 1812, unless such possession and cultivation were in virtue of some prior grant or title. This is not the law—the contrary of which this court has frequently held. (Page v. Scheibel, 11 Mo. 167; Guitard v. Stoddard, How. U. S., &c.)

V. The fourth, seventh, eighth, ninth, tenth and eleventh instructions refused, in effect declare that the certificate of confirmation given in evidence (in the name of Joachim Roy) is void. This point has already been ruled by this court in this case against the defendant. (Clark v. Hammerle, 27 Mo. 55.)

VI. The possession, cultivation, continued claim of Roy and his representatives, as well as the identity of the land in question were pure questions of fact before the jury, under proper instructions of the court, and ought not to be reviewed here. Upon a careful examination of the record, it will be seen that the case was tried in the court below in strict conformity with the rulings of this court in the same case; we, therefore, invoke the decision made in 27 Mo. 55.

VII. The objection made to the reading of the certificate of

confirmation issued by the Recorder of land titles and offered by plaintiff is frivolous. The Recorder had the same authority to issue that certificate in 1857 that he or either of his predecessors ever had to issue it, and it was lawful for him to issue it—that is, that he had lawful right to issue it cannot be denied. The objection, that it was issued *after* the suit was begun, is *point no point*. The facts existed prior to the suit, and the certificate is simply evidence of those facts.

VIII. The affidavits of Francis and Eustache Cayoux, which were the proofs taken by Recorder Hunt at the time he made his act of confirmation, were not evidence of any material fact tending to sustain the defence. Admitting (as was held in this case in 27 Mo.) that those affidavits are *hearsay evidence*, the question arises what is the hearsay or secondary evidence they establish? It is simply that Joachim Roy inhabited and cultivated the land in question until the common field fence fell down in 1798 or 1800. This evidence is not necessary to the defendant's defence. (Williams v. Carpenter, 28 Mo. 453.)

IX. The rejection of the testimony offered by the defendant, viz., that Recorder Renard had always treated certain " annotations " made on the margin of certain claims as part of the record, was proper. This evidence had nothing to do with the question at issue. It had nothing to do with the question of abandonment. This evidence was offered for the purpose of invalidating the certificate of confirmation given in evidence by the plaintiff. In other words, the effort was made to prove by the annotations that the confirmation was made to Rion and not to Roy.

X. The exclusion of the report of the Surveyor General made August 19, 1852, was manifestly correct. It is at best simply the Surveyor's *opinion* as to the proper method of making certain surveys. Upon the question of *location*, the Surveyor General was a competent witness, and might have been called. His report did not originate with the plaintiff,

nor had he any lot or part in it. The report is wholly *ex parte*, and does not assume to confirm or change any one of the surveys mentioned in the report. This fact is sufficient to justify the exclusion of the report. Whenever a Register, Receiver or Surveyor General does an official act authorized, whether such official act be evidenced by correspondence, report, or other written form, doubtless a certified copy may be given in evidence if the act is pertinent to the question at issue. But in this case the Surveyor, by his report, does nothing, nor does he propose to do anything; on the contrary, he expressly says that he does not propose to disturb " old surveys," &c.

It cannot be shown from the Surveyor's report that it contains any evidence of an official act of his. Hence, the whole was irrelevant, and only calculated to mislead the jury.

To show that official correspondence is only evidence of official acts, see Coleman v. Johnson, 29 Mo. 84.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff claimed title to the land in controversy as a part of the common field lot of the *cul de sac* common field of St. Louis, as having been confirmed to Joachim Roy's legal representatives by the act of Congress of the 13th of June, 1812, on the ground of inhabitation, cultivation or possession prior to the 20th of December, 1803, and he showed a derivative title from them to himself. To prove this title he gave in evidence certified copies of the registry of claims proved before the Recorder of land titles under the act of 26th of May, 1824; the registry of certificates of confirmation or list of claims proved; an official survey by the Surveyor General of the lot so proved, and a certificate of confirmation issued by the Recorder of land titles in 1857. Documents of like character with these have so often been held to be admissible as *prima facie* evidence of such titles that it is not deemed necessary now to discuss the subject further. (Mack-

Clark v. Hammerle.

lot v. Dubreuil, 9 Mo. 473; Bichler v. Coonce, 9 Mo. 347; Soulard v. Allen, 18 Mo. 590.)

The two documents first named speak of this claim as one and a half arpens in "front by about thirty in depth," bounded north by Guion, south by Tabeau, east by Aug. Chouteau's mill tract, and west by Chas. Gratiot. The lot appears to have been surveyed according to the calls for boundaries, rejecting the call for the quantity of "about thirty arpens in depth," so far as that call was repugnant to the calls for fixed boundaries. This was unquestionably the correct mode of surveying the lot proved; and the certificate of confirmation which was issued thereon by the Recorder of land titles, in 1857, very properly conformed to the official survey so made.

These proofs showed title in Roy's representatives to the lot described in the survey and certificate of the date of the act of 13th June, 1812.

The defendant claimed title to the same land under a New Madrid location of the date of 1818. Such title, though inferior in nature, placed him in a position that enabled him to dispute the correctness and validity of the *prima facie* superior title of the plaintiff. He undertook to invalidate this title by evidence offered for the purpose of showing that the survey of the lot and the certificate of confirmation were incorrect in respect of the location, extent and boundaries of the lot, and that the lot claimed and cultivated or possessed by Roy prior to 1803 had been abandoned by him and his legal representatives before the 13th day of June, 1812.

Concerning the location, extent and boundaries, he offered in evidence a letter from Wm. Carr Lane to Surveyor General Milburn, dated June 20, 1840, while Lane was owner of the plaintiff's title, in which he asserted as of his own certain knowledge, that the proof taken before the Recorder on page 116 of No. 2 of his Minutes, called for *forty* arpens in depth instead of *thirty*, before the record was altered by erasure, and that the claimant's name (Rion) and the word *forty* had been erased, and a subsequent interlineation made

of another name (Roy) and the word *thirty*, together with certified copies of these Minutes (No. 2, pp. 49 and 50) showing the claim of Joachim Roy's legal representatives for a lot of one and a half by about forty arpens in depth, bounded north by a lot formerly owned by Mad. Lecompte, east by widow Camp's legal representatives, south by Tabeau, and west by land unknown near to Gratiot's, and the ex tract from the registry of certificates above mentioned, which were admitted, and also the depositions of Francis and Eustache Cailloux thereto annexed, containing the testimony taken by the Recorder on proof of the cultivation and possession of the lot so claimed, which were excluded. Some other documentary evidence, relating to adjoining claims, was admitted. The testimony of Adolph Renard, offered for the purpose of showing that certain marginal annotations on page 116 of Hunt's Minutes were in the handwriting of Recorder Hunt, was excluded. There was some testimony which tended to show that the *cul de sac* common fields were embraced within the western part of Chouteau's mill tract, and that they did not cover the land in dispute. The jury have passed upon the question of location, upon the evidence that was before them, and we need concern ourselves only with that which was excluded.

In the former decision in this case, (27 Mo. 55,) these erasures and alterations were not regared as in any way defeating the right and title of Roy and his representatives, who showed a confirmation independent of them, and we do not see how they could have any material effect upon the title shown by the plaintiff. The marginal annotations were held to be no evidence whatever as between these parties, and they will be regarded as wholly immaterial here. So far as these erasures and interlineations furnished evidence that the claim had a depth of forty instead of thirty arpens, these were clearly not evidence for the plaintiff; but there was ample evidence without them to authorize the survey as it was made. So far as they tended to show that one Rion had claimed the same lot before the

Recorder, they were immaterial to the issue, and as tending to show another and different lot, the defendant had the benefit of the evidence with the jury. There was no evidence that Rion had ever obtained a title to this lot. The evidence amounted to very little towards rebutting the plaintiff's title.

The defendant complains of the exclusion of the depositions or testimony of the two Cailloux. For what purposes and to what extent these depositions are admissible in evidence, the previous decisions of this court are by no means clear, nor shall we now undertake to lay down any rule on the subject. It appears that in a former trial their depositions were read in evidence as a part of the documents offered by the plaintiff, and this court held that being thus before the jury, they were open to the defendant for what they were worth as evidence of abandonment by the two Cailloux, but that in themselves they were not admissible evidence of the facts stated in them. Here they were offered by the defendant, and as we think rightly excluded.

There was little or no evidence before the jury which had any tendency to prove abandonment. Roy died in 1801, leaving the lot to Veronique Guitard. She died in 1808, leaving it to the two Cailloux. It was confirmed to Roy's representatives in 1812, and in 1825 they brought the claim before the Recorder of land titles.

The Spanish law of abandonment continued in force until 1816, and any abandonment that could affect this lot must have taken place before 1812. To constitute abandonment there must be a departure of the owner corporeally from the land, with the intention that it shall be no longer his. Corporeal or actual possession need not be retained; but if the owner retain the property of it in his mind, no other person has a right to enter, and it is not abandoned. (Landes v. Perkins, 12 Mo. 256; Fine v. Public Schools, 30 Mo. 166.) The intention to abandon may be inferred from facts and circumstances which are competent to go to the jury as evidence from which that fact may be rationally inferred by the jury; and it is peculiarly a question of fact for the jury.

Ceasing to cultivate, mere inaction, removal to another place, is not enough, without some act of disclaimer or other fact importing and showing a positive intention to abandon all claim of ownership. (Page v. Schiebel, 11 Mo. 183.) Where the owner went to France and signified his intention never to return, that was held to be good evidence of abandonment (Salle v. Primm, 3 Mo. 530); and where the owner quit his occupancy, removed his mill from the land, and in 1808 made a sworn inventory, as an insolvent, which did not contain the lot, these facts were held to be evidence for the jury. (Barada v. Blumenthal, 20 Mo. 162.)

We find no evidence in this record of any facts of this nature, which can be said of themselves to import or to have any direct tendency to show an intention on the part of any one of the successive owners and claimants, during the period of time when they were owners prior to 1812, to abandon their claim to this lot. The possession of land is presumed to be with the owner of the title until the contrary is made to appear. Even if the depositions of the two Cailloux had been admissible in evidence, they could have no proper effect to prove an abandonment of this lot by them during the period between 1808 and 1812, when they were owners and might have abandoned their claim. The mere fact that they stated in their testimony, apparently taken in proof of the claim of Rion, that they had no interest in the lot, if it had been in fact the same lot as that of Roy, would import no more than that if they were then the owners of it, they were not at that moment aware of the fact.

The instructions given for the plaintiff laid the case fairly before the jury on the questions of title, of identity, and of abandonment. It is objected that they were too narrow, and confined the question of abandonment to Roy alone. It may be answered that there was no evidence of any abandonment by his representatives on which to predicate any further instruction in the matter; and the instructions which were refused for the defendant, on the same subject, were rightly enough refused, for the reason that there was no founda-

tion in the evidence on which such instructions could justly be predicated.

The fifth and sixth instructions asked by defendant had no basis in the law or the evidence, and were properly refused. The plaintiff had shown a complete *prima facie* title; the defendant had shown nothing that could invalidate it, and nothing remained but the matter of the true location, and on that the jury was to pass as a matter of fact. The first instruction was correctly refused for the same reason. (Page v. Scheibel, 11 Mo. 167; Guitard v. Stoddard, 16 How. U. S. 510.)

The report of the Surveyor General to the Commissioner of the General Land Office, detailing the history of his operations in making surveys, was properly excluded. The official surveys of the lots in question were the proper evidence of the final action of the Surveyor General on the subject of these surveys.

The case appears to have been fairly submitted to the jury, upon correct instructions as to the law of the case, and there being no material error injuriously affecting the rights of the defendant, the verdict must be allowed to stand.

Judgment affirmed. Judge Wagner concurs; Judge Lovelace did not sit.

[CONTINUED TO VOL. XXXVII.]

# ERRATA.

In the cases of *Lincoln v. Hilbus*, *State v. Phillips et al.*, and *State v. Smith*, on p. 149, Judge WAGNER delivered the opinion of the court.