**ALLEN et al. v. WEST LUMBER CO. et al.**
(No. 286–3537.)

(Commission of Appeals of Texas, Section B.
Nov. 1, 1922.)

1. **Abandonment** ⟨key⟩7—**Loss of legal title to real estate by abandonment unknown at common law.**

The doctrine that legal title to real estate could be lost by abandonment is unknown at common law.

2. **Common law** ⟨key⟩13—**Has prevailed in Texas since act of Congress of March 16, 1840.**

The common law has prevailed in Texas since an act of Congress of March 16, 1840, abolished the civil law.

3. **Abandonment** ⟨key⟩7—**Principle of abandonment is that title may be acquired by entrant after departure from estate by another.**

The Spanish law principle of abandonment is that, if a man abandon his immovable estate, immediately he departs from it corporeally, with intention to relinquish, it will become the property of him who first enters thereon, and under the jurisprudence of Spain and Mexico

the owner lost title when he ceased occupancy with intention to relinquish.

4. **Abandonment** ⟨key⟩6—**Question of intent under Spanish law was for jury.**

The question of intent in abandoning property under the Spanish law was to be ascertained from circumstances to be submitted to the jury.

5. **Abandonment** ⟨key⟩7—**Effect of abandonment must be determined by law then in force.**

The effect of abandonment must be determined by the law then in force.

6. **Public lands** ⟨key⟩209—**Spanish law principle of abandonment applies to Mexican colonist taking title in 1835.**

The Spanish law principle that upon abandonment of an immovable estate it will become the property of him who first enters thereon applied to abandonment in 1835 by a colonist of the Jose Vehlein Colony, to whom title was issued in that year.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by Fannie M. Allen and others against the West Lumber Company and others. From a judgment of·the Court of Civil Appeals (223 S. W. 529), affirming in part and reversing in part the judgment of the district court, both sides bring error. Judgment of the Court of Civil Appeals reversed in so far as it modified the judgment of the district court, and judgment of the district court in all things affirmed.

Collins, Morris & Barnes and Thos. J. Baten, all of Beaumont, and W. L. Dawson, of Mission, for plaintiffs in error.

Baker, Botts, Parker &·Garwood, of Houston, and Feagin, German & Feagin, of Livingston, for defendants in error.

POWELL, J. For a partial statement of the nature and result of this suit, we quote as follows from the opinion of the Court of Civil Appeals:

"This suit was instituted in the ordinary form of trespass to try title by Fannie M. Allen and other appellants, in the district court of Polk county, to recover from the West Lumber Company and the other appellees the James Morgan league of land in Polk county, Tex. The case was tried by a jury on the following special issues:

"Issue No. 1: 'Was or was not the James Morgan who resided at Morgan's Point, Tex., the James Morgan to whom the league of land in controversy was granted?' To which the jury answered, 'He was.'

"Issue No. 2: 'Did or did not the said James Morgan falsely and fraudulently represent himself to be a colonist in the enterprise of Jose Vehlein, with the intent of procuring the grant of land in controversy?' To which the jury answered, 'He did not.'

"Issue No. 3: 'Did or did not James Morgan of Harris county abandon the league of land

involved in this controversy?' To which the jury answered, 'He did.'

"On this verdict judgment was rendered for appellees. Appellants filed a motion, after the return of the verdict, asking that judgment be rendered in their favor, which motion was overruled, and to which appellants excepted, and have appealed from the judgment rendered against them in this case.

"Title was issued to James Morgan October 8, 1835, as a colonist of Jose Vehlein's Colony, under the contract made with the supreme government of Mexico, December 21, 1826. Appellees (defendants below) claimed to hold under a James Morgan of Copiah county, Miss., and admitted, that they did not claim under the James Morgan of Morgan's Point, to whom the jury found that the title had issued. It was further admitted by all parties that this James Morgan lived at Morgan's Point in Harris county, Tex., from 1831 until his death in 1866, and the record clearly established the fact that he did not abandon his home at Morgan's Point at any time during this period.

"In connection with the third issue which we have above given, the court charged the jury as follows: 'At the time the league of land in controversy was granted, in 1835, the law was if a man be dissatisfied with his immovable estate and abandoned it, corporeally, with the intention that it shall no longer be his property, his interest therein ceased.'

"Appellants, by proper assignments, challenge the correctness of this charge. Their assignment is that, 'Under the law one having once obtained a legal title to land in Texas could not abandon the same, without an abandonment of the realm.' "

The Morgan league in suit was located in conflict with the Dikes league, the Nash league and the Moreland league. By agreements made in the trial court and an admission filed in the Court of Civil Appeals, title to all of said three surveys was conceded to be in defendants in error.

The Morgan league also conflicted, to the extent of about 350 acres, with the Augustine league. Plaintiffs in error contend that the Morgan league title was superior to that of the Augustine league, so far as aforesaid 350 acres were concerned, but the Court of Civil Appeals overruled this contention, and awarded the Augustine tract to the defendants in error.

There were only 1,500 acres of the Morgan league free of conflict. The Court of Civil Appeals entered judgment, affirming the judgment of the trial court in awarding to defendants in error all portions of the Morgan league in conflict with surrounding surveys, but reversed the judgment of the district court as to the remaining 1,500 acres, and rendered judgment, awarding that much of the league in suit, free of conflict with surrounding surveys, to plaintiffs in error. See 223 S. W. 529.

All parties objected to the judgment of the Court of Civil Appeals, and filed motions for rehearing there. Both motions were overruled. Both sides made application to the Supreme Court for writ of error, and both were granted. The application filed by plaintiffs in error was granted after that of defendants in error had already been granted. Plaintiffs in error, in their application, asked that the judgment of the Court of Civil Appeals be affirmed, except in so far as it awarded to defendants in error the 350 acres of the Morgan league in conflict with the Augustine league. The cause has now been assigned to us for review and recommendation.

Plaintiffs in error instituted this suit in 1915 as heirs of the original grantee, James Morgan. It seems, from the record, that between 1835 and 1915, a period of some 80 years, neither the James Morgan, under whom plaintiffs in error claimed, nor any one claiming under him, asserted any claim to, or paid any taxes on, the land in suit. On the other hand, it appears from the record, that defendants in error, claiming also under a James Morgan, alleged to be the original grantee, paid taxes on this land, and performed all of the duties incident to ownership for more than 55 years. In many instances possession was taken, and their title to portions of the league was conceded by plaintiffs in error by reason of the statute of limitations.

We think the controlling question upon this appeal in the Supreme Court is whether or not the district court was correct in submitting the issue of "abandonment" to the jury. If that court correctly submitted such issue, then its judgment awarding all the land to defendants in error must be affirmed. In passing upon this very issue, the Court of Civil Appeals says:

"In closing our discussion of this case, we would say that we have examined carefully the testimony offered by appellees' on the issue of abandonment, and in our opinion if the court correctly charged the jury as to the law, the record sustains the verdict."

The jury, the district court, and the Court of Civil Appeals all hold that the record sustains the finding of abandonment of this land by James Morgan of Morgan's Point, if any such law was in force in Texas in 1835. We think the lower courts are correct in this finding of fact. Certainly, it cannot be said that there is no evidence in the record to sustain this finding of the jury and the lower courts.

We now come to the inquiry as to whether or not the district court was warranted in charging the jury as it did on this issue of abandonment of title. After a very careful and exhaustive research of the authorities, we have concluded that the district court did correctly charge the law in that respect; and that the Court of Civil Appeals erred in its holding to the contrary. For authorities sustaining our position, we cite the following: Sideck v. Duran, 67 Tex. 256–264, 3 S. W. 264; Sena v. United States, 189

U. S. 239, 23 Sup. Ct. 596, 47 L. Ed. 787; Corpus Juris, § 14, par. C, title "Abandonment"; 1 Cyc., "Abandonment," page 6; 1 Partidas, law 50, page 365; Hall's Mexican Law, § 1489; Landes v. Perkins, 12 Mo. 257; Clark v. Hammerle, 36 Mo. 640; Fine v. Public Schools, 30 Mo. 175; Barada v. Blumenthal, 20 Mo. 164; Page v. Scheibel, 11 Mo. 167.

[1-3] The doctrine that the legal title to real estate could be lost by "abandonment" is unknown to the common law. Inasmuch as the people of Texas have been governed by the common law since March 16, 1840, when an act of Congress abolished "civil law," the theory of abandonment of title is novel to most of us. However, it was a well-settled principle of the Spanish civil law and obtained in the Spanish colonies even after the latter. in many instances, became independent nations. The doctrine finds its basis in "De Partidas," which was compiled and published under the provisions of a royal order made in 1255 A. D. The work was not officially promulgated until the year 1505, when it received the royal sanction at the Cortes held in the city of Toro. The work takes its name "De Partidas" from its division into seven parts, and contains the fundamental principles of the law of Spain. In 1819 the Legislature of Louisiana authorized the translation and compilation of all that portion of Partidas which was considered as having the force of law in that commonwealth. In pursuance of that act, there was published "The Laws of Las Siete Partidas," comprised in two volumes, and which are now found in many of our law libraries. In volume 1 of this translation, page 365, under "Law 50" is found the doctrine upon which the district court in the case at bar relied. This doctrine is stated in Partidas as follows:

"If a man be dissatisfied with his immovable estate and abandon it, immediately he departs from it corporeally, with an intention that it shall no longer be his, it will become the property of him who first enters thereon."

The doctrine has been upheld in the authorities heretofore cited by us. We shall quote from a few of them, as follows:.

Corpus Juris, § 14, par. C, under title "Abandonment," says:

"At common law a perfect legal title to a corporeal hereditament cannot, it would seem, be lost by abandonment; but under the Spanish law in force in some of the states an owner might depart from his land with an intention that it should no longer be his, and it then became the property of him who first entered upon it."

[4] There are many cases from Missouri upholding this doctrine. We quote the following from Landes v. Perkins, 12 Mo. 257:

"The Spanish law of abandonment declared that if a man be dissatisfied with his unmoveable estate and abandon it, immediately he departs from it corporeally with an intention that it shall no longer be his, it will become the property of him who first enters thereon. That although the owner had no corporeal possession of this estate, he would, nevertheless retain the property of it in his mind, and therefore no other person ought or can enter upon it. 1 Partidas, law 50, p. 365. The *common law* not being in force in this state prior to 1816, the law of abandonment prevailed here previous to that time. From this law it is manifest that whether a party abandoned his property or not, depended altogether upon his intention, *to be ascertained from circumstances. It is a question peculiarly appropriate to be submitted to the consideration of a jury. The law is plain when the facts are ascertained.*"

[5] The doctrine has been expressly approved as applicable to Texas by our Supreme Court in a very able and clear opinion by Justice Gaines in the case of Sideck v. Duran, 67 Tex. 256, 3 S. W. 264, from which we quote as follows:

"But Sideck's application . for the second grant, in which he declared void his title under the first, took place in 1834, and the effect of his act must be determined by the law then in force, *and we think there can be no question that under the jurisprudence of Spain and Mexico the owner of land lost his title when he ceased to occupy it with the intention of relinquishing his claim upon it.*

"We extract the following from the Partidas: 'If a man be dissatisfied with his immovable estate and abandons it, immediately he departs from it corporeally, with the intention that it shall no longer be his, it will become the property of him who first enters thereon.' Partidas 3, title 4, law 50. See Hall's Mexican Law, p. 458, § 1489. See also, Escriche's Dictionary, 'Abandono de Cosas.'"

"The question of abandonment under the laws of Spain has come up in several cases in the Supreme Court of Missouri, where that system of jurisprudence prevailed until the adoption of the common law in 1816. In Landes v. Perkins, 12 Mo. 256, the provision of 'the Partidas,' from which we have quoted, is construed, and it is held in effect that the relinquishment of possession with the intention of abandonment divested the title of the owner. See, also, Clark v. Hammerle, 36 Mo. 639, and cases cited in that opinion.

"The judge who tried this case in the court below found in effect that Antonio Sideck *abandoned* his title to the land in .controversy when he made application for the second grant, and that since that .time neither he nor his heirs had ever set up claim to it until this suit was instituted in 1878. The finding that Sideck abandoned his claim is assigned as error."

In the same case, after discussing facts which tend to show abandonment of title, Judge Gaines proceeds with his opinion as follows:

"For these reasons we are of the opinion that Sideck *abandoned* the land intending, to relinquish his claim to it, and that, under the law then in force, he lost whatever title he then had, and that therefore his heirs cannot recover it. It is to be remarked that there are

numerous decisions of the court holding that the settler or his purchaser did not forfeit his land by the mere. fact of an abandonment of possession; but we think none can be found that, under the laws of Mexico, a title to land was not divested by ceasing to occupy it with the intention of relinquishment. This is conclusive of the case."

[6] The doctrine was recognized by the Supreme Court of the United States in the case of Sena v. United States, 189 U. S. 239, 23 Sup. Ct. 596, 47 L. Ed. 787. In that case, the court approved the Missouri cases and the case of Sideck v. Duran, supra, and from this opinion of the United States Supreme Court we extract the following:

·"Under our Anglo-Saxon system of jurisprudence, questions of the abandonment of land by the owner rarely arise, since they are usually sold to a purchaser or to the state for taxes; but the Spanish law recognizes distinctly the right to abandonment. It is stated in 1 Partidas, law 50, p. 365, that, 'If a man be dissatisfied with his immovable estate and abandons it, immediately he departs from it corporeally, with an intention that it shall be no longer his, it will become the property of him who first enters thereon.' See also Hall's Mexican Law, par. 1489. The same principle is stated by Escriche, title 'Abandono de Cosas:'

" 'If the owner voluntarily abandons a thing, whether personal or real, with intent no longer to count it in the number of his possessions, because it is useless or burdensome, or for mere caprice, he loses his ownership, and the first who occupies it makes it his.' We are also referred by counsel to a law of the Departmental Council of New Mexico, enacted in 1837, which declares that 'every individual who abandons the land upon which he has settled, and which he acquired by grant, with the intention of establishing himself elsewhere to live there, and does not leave some one to take his place in ordinary labor, shall lose the real property he had acquired.' See, also, Landes v. Perkins, 12 Mo. 238–256; Sideck v. Duran, 67 Tex. 256 [3 S. W. 264]."

We think these decisions are conclusive of the case at bar, and that the district court correctly tried this issue. The Court of Civil Appeals, in referring to the case of Sideck v. Duran, supra, says:

"It seems that this question has been before our courts many times, and, unless the Sideck Case holds to the contrary, all authorities make a clear distinction between the law of abandonment of Spain and Mexico, as stated in the Partidas, and the colonization laws of Mexico in force in Texas."

Just before making the statement just quoted, the Court of Civil Appeals quotes portions of the opinion in Sideck v. Duran, and, in effect, admitted that part of its holdings were contrary to its own views in the instant case. But, proceeding, the Court of Civil Appeals says that the Supreme Court, in Sideck v. Duran, was "not content to rest its opinion" on the law of abandonment. As

we construe the opinion of the Court of Civil Appeals, that court is of the view that the Supreme Court's discussion of the law of abandonment in Sideck v. Duran was more or less obiter dicta, rather loosely thrown in by Judge Gaines, and hence not an authoritative decision. We have examined Judge Gaines' decision most carefully, and conclude that he did rest his case more upon the civil law than the common law. After discussing the doctrine of abandonment, he says that that doctrine is "conclusive of the case." We find it difficult to understand how he could have more strongly expressed his faith in what he had just said than by the use of these words. To us, they fall far short of any apology on his part for what he had said, and do not, in. any sense, evidence any doubt upon his part as to the correctness of what had gone before.

It is true that he goes on to say that—

"If the rules of the common law were to be applied to the transaction, that Sideck's conduct was such as to estop his heirs from setting up claim to the land against those claiming under Blanco."

There is nothing in the opinion by Judge Gaines which shows that his decision rested more upon the common-law doctrine of estoppel than upon the civil-law doctrine of abandonment. He rested his decision upon both, and the case is just as good authority upon one point as the other. We do not consider what he has said as obiter dicta in any sense. As already said, we really think that he rested his decision upon abandonment more than estoppel, for he stated that the former was conclusive of the case. Furthermore, he did not say that he applied the law of estoppel to the case, but merely stated that the result would be the same "if" it were applied.

The Court of Civil Appeals attempts to apply the colonization laws of Mexico in force in Texas to this case. That there was another law of "abandonment of the realm" in force in Texas during a certain period is not doubted. The civil law was supplemented by many laws of abandonment and forfeiture.

But the case of Sideck v. Duran is a complete answer to the holdings of the Court of Civil Appeals in the instant case, as we view it. In that case Judge Gaines was dealing with lands in the territory of Texas and Coahuila, and the parties had not abandoned the realm. And Judge Gaines did not hold that a forfeiture by the state was necessary to a divestiture of title by abandonment.

In this connection, it is significant, we think, that Judge Gaines uses the following language in the Sideck Case:

"The doctrine that title may be divested by abandonment has been recognized by the courts of other states. It is, however, doubtful whether the point has ever been directly involved in any authoritative decision. 3 Wash. on Real Prop., book 3, c. 2, § 5, 4th Ed., p. 61 et seq."

This statement by Judge Gaines assures us that he made diligent search into the authorities bearing upon the question at issue. We must assume he did not overlook the former decisions of his own court. We are convinced that he must have known of all these earlier Texas decisions relied upon by the Court of Civil Appeals in rendering its decision in the case at bar. Knowing of them, it is only reasonable to assume that he did not consider them as dealing with the question then before him. Otherwise he would not have said the question had not before been squarely up to the courts. At any rate, the case of Sideck v. Duran, supra, is the latest expression of our Supreme Court upon this question. Furthermore, as we read the cases cited by the Court of Civil Appeals, we do not find that they anywhere *even intimate* that there was not another law of abandonment in addition to the one they were discussing.

Defendants in error and the trial court based their contention and charge, respectively, upon the authority of the Sideck Case, and counsel for defendants in error now contend that the only way to affirm the decision of the Court of Civil Appeals herein is by overruling Judge Gaines' opinion in the Sideck Case. We think this contention is sound. Therefore we conclude that the district court correctly charged the law in this case.

What we have heretofore said renders it unnecessary to pass upon any of the other questions raised in either of the applications. Plaintiffs in error, under the findings of the jury, lost the entire league, and the district court properly awarded judgment for defendants in error for all the land in controversy.

Therefore we recommend that the judgment of the Court of Civil Appeals, in so far as it modified the judgment of the district court, be reversed, and that the judgment of the district court be, in all things, affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.