

# THE ATTORNEY GENERAL
# OF TEXAS

**JOHN BEN SHEPPERD**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

October 14, 1953

Hon. W. G. Woods, Jr.
County Attorney
Liberty County
Liberty, Texas

Dear Mr. Woods:

Opinion No. S-107

Re: Fishing rights of
the public in and
along navigable rivers
bordered by Mexican
land grants.

Your request for an opinion of this office contains the following specific questions:

"1: What is the boundary line between state and riparian <u>ownership</u> along the Trinity River where it is navigable in fact as well as navigable in law as defined in R.C.S. Art. 5302, and the land on each side of said river was granted during 1835 by the Supreme Government of Coahuila and Texas, such grants extending their boundaries to the margin of said river?

"2: What right, if any, does the public have to <u>use</u> the Trinity River and its bed and banks and sand bars in the area described in the facts set out, to wit, where the river lies between two Mexican grants made in 1835?

"3: According to the facts above mentioned, are those persons who reached the Trinity River by way of the dedicated right of way on either side of said river and then walk up and down the banks, the sand bars and in the bed of said river staying within the cut banks and vegetation lines, trespassing within the purview of T.P.C. 1377?

"4: Can the riparian owner legally extend his fences down into the river water, place posted signs on said fences, and prevent the public crossing such fences, or otherwise obstruct their travel up and down the bed and bank of said river?

"5. Can the riparian who owns land on the
north and south side of the dedicated right of
way of State Highway T-105 on the east side of
the Trinity River legally tie his fences on the
right-of-way line across such right-of-way line
into or to abut the state bridge which crosses
the river in such a manner as to obstruct the
right-of-way down to the river, place signs
reading 'Posted, Private Property, No Hunting -
Fishing,' and prevent the public from using
the right of way?"

The extent and effect of land grants made in
Texas prior to the adoption of the common law must be
determined according to the rules of civil law. Miller
v. Letzerich, 121 Tex. 248, 49 S.W.2d 404 (1932); State
v. Grubstake Inv. Ass'n, 117 Tex. 53, 297 S.W.2d 202
(1927); Allen v. West Lumber Co., 244 S.W. 499 (Tex.
Comm.App.1922).

The line of demarcation between the stream bed
and grants bordering the stream was established by the
Supreme Court in Motl v. Boyd, 116 Tex. 82, 286 S.W. 458
(1923), where the Court "adopted the same method for de-
fining and marking the line between public and private
ownership along the banks of a stream navigable accord-
ing to the definition of the statute /Article 5302/ as
was used by the Supreme Court of the United States in de-
fining and marking the boundary line between Texas and
Oklahoma." Diversion Lake Club v. Heath, 126 Tex. 129,
86 S.W.2d 441, 447 (1935). In Oklahoma v. Texas, 260
U.S. 606, 631 (1923), the Court held

". . . that the bank intended by the treaty
provision is the water-washed and relatively
permanent elevation or acclivity at the outer
line of the river bed which separates the bed
from the adjacent upland, whether valley or
hill, and serves to confine the waters within
the bed and to preserve the course of the
river, and that the boundary intended is on
and along the bank at the average or mean level
attained by the waters in the periods when
they reach and wash the bank without overflow-
ing it. When we speak of the bed we include
all of the area which is kept practically bare
of vegetation by the wash of the waters of the

413

river from year to year in their onward course, although parts of it are left dry for months at a time; and we exclude the lateral valleys which have the characteristics of relatively fast land and usually are covered by upland grasses and vegetation, although temporarily overflowed in exceptional instances when the river is at flood."

In Motl v. Boyd, supra, the above definition was said to be "consistent with the Mexican or Spanish law on the subject." (286 S.W. at 469.)

The Texas Supreme Court in Diversion Lake Club v. Heath, supra, again quoted approvingly from Oklahoma v. Texas as follows:

"The line was still more definitely and practically described in the report of the Commissioners, which was approved by the court, in the following language. 'The boundary line is a gradient of the flowing water in the river. It is located midway between the lower level of the flowing water that just reaches the cut bank and the higher level of it that just does not overtop the cut bank.'"

Other cases recognizing and applying this description are State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065 (1932); Maufrais v. State, 142 Tex. 559, 180 S.W.2d 144 (1944).

In answer to your second question, the Supreme Court in Diversion Lake Club v. Heath, supra, held that,

"Because of the state's ownership of the beds of statutory navigable streams and of their banks up to the line as above defined /gradient line7, the public may use their beds and banks up to such line for fishing. Beyond that line, unless the rule of civil law is applied, they have no right to go without the consent of the riparian landowner." (86 S.W.2d at 447.)

414

The court stated that it was not necessary in that case to decide, and the court did not decide, "whether the rights of the public to use the banks of streams in this state where they are bordered by grants made under Spanish or Mexican sovereignty are in any respect different from the rights of the public herein determined." (86 S. W.2d at 447.) However, the court recognized the civil law to be as follows:

"With reference to the civil law, Farnham says: 'By the civil law the public use of the banks of a river was part of the law of nations, just as that of the river itself.' Farnham's Water and Water Rights, vol. 1, p. 662. One of the laws of the Partidas provides: 'And although the banks of rivers are, so far as their ownership is concerned, the property of those whose lands include them, nevertheless, every man has a right to use them, by mooring his vessels to the trees, by repairing his ships and his sails upon them, and by landing his merchandise there; and fishermen have the right to deposit their fish and sell them, and dry their nets there, and to use said banks for every other purpose like those which appertain to the calling and the trade by which they live.' Las Siete Partidas (C.C.H. 1931), part III, title XXVIII, law VI, p. 821." (86 S.W.2d at 447.)

In State v. Grubstake Inv. Ass'n, 117 Tex. 53, 297 S.W.2d 202, 203 (1927), the court said that the owner of riparian land granted by Coahuila and Texas in 1835 "acquired title to the river bank, yet such title was burdened with certain servitudes." The "servitudes" are those set forth in the portion of the Partidas quoted in Diversion Lake Club v. Heath, supra.

It is also made clear in Diversion Lake Club v. Heath, supra, that the persons who reach the river in the manner set forth in your third question are not trespassers under Article 1377 of the Penal Code. In that case the fisherman "entered the waters of Diversion Lake and fished in it by placing their boats into the water from the low bridge on which the public road crosses the river and lake near the upper end of the lake." (86 S.W.2d at 442.) The court held that under such circumstances they were not trespassers.

The fence described in your fifth question is a trespass upon the highway right of way and is in the exact position relative to the bridge as the fence condemned in Cornelison v. State, 49 S.W. 384 (Tex.Crim.App. 1899). That this fence and the fences described in your fourth question cannot be so maintained as to prevent the public from gaining access to the river by means of the highway right of way or to prevent them from going up and down the river in boats and fishing in its waters is likewise settled by Diversion Lake Club v. Heath, supra.

## SUMMARY

The public may use the bed and banks of the Trinity River up to the gradient boundary for fishing and may make certain uses of its banks above that line if they are held under civil-law grants. The riparian owners cannot prevent the public from gaining access to the river by means of a highway right of way by erection of a fence thereon and cannot prevent the public from going up and down the river in boats and fishing in its waters by the erection of fences across the river.

APPROVED:

Yours very truly,

Burnell Waldrep
Reviewer

JOHN BEN SHEPPERD
Attorney General of Texas

Willis E. Gresham
Reviewer

Robert S. Trotti
First Assistant

By   Mert Starnes
  Mert Starnes
  Assistant

John Ben Shepperd
Attorney General

By   Jesse P. Luton, Jr.
  Jesse P. Luton, Jr.
  Assistant