ENOCH JONES v. JUAN MONTES.

Where testimonios were extended on paper wanting the proper stamp correspond-
ing with the year, they were not absolutely null, but only wanted faith and
credit, and might be proved by proper evidence of their genuineness; and it
seems that since the introduction of the Common Law rules of evidence, the
same proof is required, although the testimonio be upon paper of the proper
stamp.

See this case as to the distinction between that class of cases where a party who
had abandoned the country, afterwards sought the favor of the Government to
perfect an inchoate title, and cases where a forfeiture of perfect titles on account
of an abandonment of the country and adhering to its enemies is claimed. In
the latter cases the forfeiture must have been pronounced according to the due
course of the law of the land, for which see 7th Article of the Declaration of
Rights of the Republic.

Appeal from Bexar. The first page of the instrument was
written on paper stamped for the year 1827 only; the balance
was stamped for the years 1832 and 1833. The date of the
instrument was 1833.

*I. A. & G. W. Paschal,* for appellant.

*Howard* and *Hughes,* for appellee.

LIPSCOMB, J. We have regarded every point presented to
our consideration in this case as settled by previous decisions
of this Court, excepting the single one, that the title extended
to Montes does not appear to be upon paper of the proper
stamp. We believe that the principle decided in the case of
the Heirs of Nestor Clay v. Holbert, the last Term of this
Court at Galveston, must be decisive of this point. In that
case, after an examination of all the Spanish authorities
accessible, we ruled that the grant having been executed with

the assistance of but one witness, did not make it a nullity, but that it only affected the faith and credit as evidence, to which it was entitled ; that if there had been two assisting witnesses, it would have made full proof and been entitled to full faith, but if only one, it was not proof of itself, but required proof *aliunde* of its having been executed, before it could be read in evidence. We believe the want of paper of the proper stamp corresponding with the year presents precisely the same category ; that it is not an absolute nullity, but that it requires proof additional, before it can be read in evidence. From the authorities, we believe that although, as it stands, wanting the seal corresponding with the year, it cannot have such full faith as would make it proof *per se* of the grant, but when the grant is proved by other testimony to have been executed, it is valid and may be read in evidence. The authorities examined and cited in the case of Clay v. Holbert are applicable to this case, and will there be found. We believe that the misconception and difference of opinion as to such defects, and more particularly in this case, grow out of a mistranslation of the Spanish words in the 10th Decree of the General Government of Mexico, 6th October, 1823, "*no hara fe,*" translated in the appellant's brief, "shall have no force in law," which would be regarding it as an absolute nullity, when it should be translated, shall have no faith or credit. Now the want of that faith and credit, as we have shown, does not render the instrument a nullity, but only calls for other proof to supply the want of that *per se* credit it would have had, but for the defect of a corresponding seal. This proof, we believe, was made, and made too in conformity with the Common Law rules of evidence, which proof we have always required to be made, in cases where the testimonio is offered in evidence.

We will notice another objection raised by appellant against the correctness of the judgment of the Court below in this case. It is said that Montes lost his right of citizenship, by going off to Mexico at the time the Mexicans under General Wool re-

turned, and the case of The State v. Casenova's adm'x (1 Tex. R. 401) is relied on as authority. The two cases are not analogous. In this case it is not pretended but that Montes was a citizen at the date of the Declaration of Independence, and all the right he then had to the land in controversy was secured to him ; and if he left under circumstances that, in the opinion of this Court, would forfeit his citizenship, the facts by which such onerous penalties were incurred, would have to be tried by a due course of law under the 7th Art. of the Declaration of Rights of the Constitution of the Republic, which is as follows : " No " citizen shall be deprived of privileges, outlawed, exiled, or in " any manner disfranchised, except by due course of the law of " the land." And the 6th Article, immediately preceding, provides, " In all criminal prosecutions, the accused shall have the " right of being heard by himself or counsel, or both ; he shall " have the right to demand the nature and cause of the accusa- " tion ; shall be confronted with the witnesses against him, and " have compulsory process for obtaining witnesses in his favor; " and in all prosecutions by presentment or indictment he shall " have the right to a speedy and public trial by an impartial " jury ; he shall not be compelled to give evidence against him- " self ; or be deprived of life, liberty or property, but by due " course of law. And no freeman shall be holden to answer " for any criminal charge but on presentment or indictment by " a grand jury, except," &c. Here we have distinctly defined what is meant by "due course of the law of the land." Had he never acquired citizenship, but had left the country before the adoption of the Constitution, a forfeiture of his rights might have been provided for in a summary way.

But if he had been on his trial for the offences, that would have incurred such severe penalty, the evidence would have been far from sufficient to establish the facts necessary to sustain the charge. In the case of The State v. Casenova's Administratix, her intestate had left the country, with all his family, with the enemy. and died in Mexico ; and his administra-

trix was not seeking or defending rights previously perfected, but was asking the bounty of the Government of Texas for a headright certificate for a league and labor; and it was ruled that the oath required by applicants for such donation, and the proof in case of his heirs, required that it should be shown that his residence continued to the time of making the application, whereas the evidence showed he had ceased to be an inhabitant, by changing his domicil. The one was defending his rights to property acquired before the Declaration of Independence; and as he had acquired citizenship under the Government of Texas, he had a right to its enjoyment until deprived thereof by due course of law. The other was asking the bounty of a Government, after removing from its jurisdiction. The judgment is affirmed.

Judgment reversed.