SHEFFIELD (PAGE v.). See Case No. 10,667.

SHEFFIELD (SEDGWICK v.). See Case No. 12.624.

SHEHEE (McGILL v.). See Case No. 8.797.

---

## Case No. 12,744.

### SHEIRBURN v. HUNTER et al.

[3 Woods, 281;[1] 1 Tex. Law J. 319.]

Circuit Court, E. D. Texas: May Term, 1878.

MEXICAN LAND TITLES — EVIDENCE — ASSISTING WITNESSES — GRANT OF LAND WITHOUT THE LIMITS OF THE COLONY—EFFECT.

1. According to the Spanish law, as interpreted by the courts of Texas, assisting witnesses are not necessary to the validity of final titles. extended by alcaldes and commissioners to make sales.

2. The fact that such document is written on unstamped paper is not fatal to its validity.

3. A grant purporting to convey land lying within the limits of a colony will be void if the land in fact lies outside such limits. unless the officer extending the title and the grantee acted in good faith and with reasonable ground to believe that the land was actually situated within the colony.

4. According to the jurisprudence of Texas. a defendant in an action of trespass to try title, who has pleaded not guilty. and has also. in pleading the statute of limitations. set up title in himself. is not precluded from showing the invalidity of the plaintiff's title.

In this case [by J. A. Sheirburn against W. L. Hunter and others] the intervention of a jury was waived, and the issues of fact as well as law submitted to the court.

W. P. Ballinger, T. M. Jack, and M. F. Mott, for plaintiff.

A. H. Willie. C. F. Cleaveland. and Prior Lea. for defendants.

MORRILL. District Judge. Plaintiff's title is a testimonio issued by Jose Jesus Vidawri, a commissioner of Power & Hewitson's colony. dated November 20, 1834, to four named

[1] [Reported by Hon. William B. Woods, Circuit Judge. and here reprinted by permission.]

persons jointly, calling for a league of land fronting on Colet's creek and boundaries described, and a conveyance to himself by two of the four grantees.

Defendants' answer is: (1) Not guilty; (2) statute of limitations and occupancy of the land by virtue of their titles and adversely to plaintiff. Defendants also excepted to the sufficiency of the title of plaintiff, because: (1) It was not written on stamped paper; (2) it had no attesting witnesses; (3) the land described did not lie in Power & Hewitson's colony.

Since most, if not all, of the questions raised by the parties in this case have been adjudicated, either by the supreme court of Texas or of the United States, or both, the several points raised will be disposed of by reference to the cases in which the decisions have been made. In Clay v. Holbert, 14 Tex. 189, it was decided that assisting witnesses were not essential to the validity of the acts of possession extended by alcaldes and commissioners in cases of sales, etc. The object of such witnesses was to authenticate the act so that it would prove itself. In the absence of them the genuineness of the document must be proved according to the general principles of evidence. In Jones v. Montes, 15 Tex. 351, the court disposed of the case relating to the want of stamp paper in the same manner as for want of witnesses. In both cases it was decided that assisting witnesses and the stamp went to establish the authenticity or genuineness of the document offered in evidence. and that the want of faith or credit that would arise by the want of the witnesses of assistance and stamp-paper could be established by other testimony. Though this court can not fully appreciate the conclusiveness of the reasoning of the supreme court of the state, yet, as the decision relates to, and adjudicates upon, a local law, it must be regarded by this court as if it were a part and parcel of the statute.

The next exception to the testimonio is, that the land lies outside of, and beyond the boundaries of Power & Hewitson's colony; that the commissioner had no authority to grant it, and that the grant is void. That the conclusion would certainly follow if the premises are true, has been decided, not only in Texas. but in the supreme court of the national government. as well as in other states. Mason v. Russell. 1 Tex. 721; White v. Burnley. 20 How. [61 U. S.] 235; M'Lemore v. Wright, 2 Yerg. 326. In Hamilton v. Avery, 20 Tex. 612, it was held that where part of a colonial grant lay within the colony and part without, and the boundary of the colony was well defined, that the grant was void as to the part lying beyond the limits of the colony. the commissioner having no authority to extend titles to land outside of the colony. The testimony in this case shows that there have been two boundary lines run showing the northern boundary of Power & Hewitson's colony. One of these was run by White,

in October, 1834, and the other by Richardson. It further appears from the maps introduced and other testimony, that the nearest portion of the grant, under which plaintiff claims, is a half of a mile outside of and beyond the colony boundary as run by White, and upwards of five miles of the one as run by Richardson. And if we are to be governed by the decisions of the supreme court, as appears in Mason v. Russell, or Hamilton v. Avery, supra, we should be compelled to declare that the title of plaintiff is null and void. But the plaintiff refers to Hamilton v. Menifee, 11 Tex. 718, and contends that the principles decided therein, if applied to the plaintiff's grant, would sustain its legality. As this is a leading case, and as all other cases involving the subject-matter refer to this case as authority, and more particularly as the court, in its decision, necessarily discussed, and virtually decided upon, the boundaries of Power & Hewitson's colony, which is now before this court, it will be necessary to quote, and somewhat extensively, from the opinion of that case. The facts in the case were, that one Buentello applied for a "grant" to the governor of the state; that all the usual preliminaries had been complied with, and that the alcalde of Goliad, on the 28th of July, 1833, decreed that, in consequence of the land having been declared vacant and not pertaining to any person or corporation, and finding it without the literal leagues and within the limits of his municipality, that the designated land be surveyed and title issued. It further appears that afterwards the same land was granted to Dona Dolores Carabagal by Power & Hewitson's colonial agent. The suit was instituted to test the comparative merits of the titles. The Buentello survey lay, mostly, between the two lines run by White and Richardson. If, therefore, White's line was the true line, most of the survey would be in the colony, and if Richardson's line was the correct one, most of it would be beyond the colony. In giving their opinion the court say: "It seems that the authorities of the municipality of Goliad, the surveyor and the grantee, were confident that the land was without the coast leagues. It would be an act of great injustice to permit titles, fairly and honestly granted, with reference to a line of boundary not traced by the government, but, honestly determined upon by the authorities on the best lights which they had on the subject, to be impeached, because they are two or three miles within or without what may now be supposed to be the exact line. We are of opinion, therefore, that a variation of two or three miles from what may now be determined upon to be the exact line should not defeat titles, if, when issued, they were supposed to be in conformity to the line, and which, on fair principles, can not be deemed to have been located or deeded in wanton disregard and in violation of the laws imposing restrictions on titles in the territory embraced by such line. The mode of running

a line adopted by Richardson, as we understand it, is one sufficiently accurate. Adopting this line as the best adapted for the definition of the limits of the grant of Buentello, except a small portion being without such line, it is good, in itself, for all parts without the line. White's line was not run till October, 1834." Such are the quotations from the opinion of the chief justice, and which have been substantially followed in other cases. In Ledyard v. Brown, 27 Tex. 393, the court say: "We think it could hardly be seriously urged that a title issued in good faith and within the limits in which the officer issuing it was accustomed to exercise his jurisdiction, and within the limits to which he might reasonably have concluded his authority extended, should be declared void upon the ascertainment of the fact, years afterwards, that it was a short distance beyond his colonial limits." Again, in Elliott v. Mitchell, 28 Tex. 105: "If the conclusion may fairly be drawn that the commissioner and grantee might reasonably believe that the lands were within the limits of the colony, the grant must be sustained."

From these opinions there can be no difficulty in adjudicating upon the merits of the case now before this court. It is beyond doubt that White's line was run in October by the order of Vidawri. On what day in October does not appear, but if it was on the last day it would then be twenty days previous to the issue of the title under which plaintiff claims. Vidawri, then, must have known that the land was beyond the limits of the colony when he made the grant on the 20th of November, afterwards. Even without this positive knowledge that the land was beyond the colony limits of ten leagues, it seems, from the opinion herein before quoted, that it was so considered by the community at large. The very fact that Buentello, an old citizen of the country, who could have obtained his land as a colonist of Power & Hewitson, as well as from the alcalde of Goliad, applied to the alcalde instead of the colony, and the fact that the public authorities who issued this grant extending, as it did, at least five miles nearer the divisional line than the land now under consideration, furnishes, itself, strong testimony to rebut the presumption that the title was "fairly and honestly granted," and that it was "honestly determined upon by the authorities on the best lights which they had on the subject."

It may be further added from the fact that it does not appear that two of the parties to whom the "grant" was issued have ever attempted to claim the same, and that one of them has come into court as a witness, and testified that he knew nothing of the grant till more than four years after it was issued, and till he had obtained his land by virtue of the laws of the republic of Texas; from the fact that no one of the four of the grantees ever signed a petition for the land, there is good ground to infer that the grant was issued without the request or

knowledge of the grantees. From the fact that the boundaries of the land set forth in the grant do not call for any object in any corner or any line, notwithstanding the map shows that one of its lines crossed a large creek, and the testimony shows that the tract was heavily timbered, and from the additional fact that there is no report of a surveyor relative to the land, as is issued in such cases, there is good reason to believe that there never was such a survey. From all the facts in the case, I can come to no other conclusion than that the land was at least five miles beyond the real boundary of the colony, and that the commissioner Vidawri had reason to believe, both from the general opinion of the people, and from the surveyor appointed by him to run the line, that the land was not in the colony when he issued the title, and that the defendants were not guilty of any trespass upon plaintiff's land, and that his title is a nullity.

The plaintiff has assumed, in argument, the position that because the defendant, in addition to the plea of "not guilty," has pleaded a special title in himself, that the defendant is precluded from showing the invalidity of plaintiff's title, and refers to Custard v. Musgrove, 47 Tex. 218, to sustain this position. I have carefully examined that case, also Shields v. Hunt, 45 Tex. 426, and Rivers v. Foote, 11 Tex. 662. None of these cases decides the position assumed, but, on the contrary, in the case relied upon by plaintiff, Custard v. Musgrove, the chief justice states, "the rule to which plaintiff refers" may not apply to a claim of title under the statute of limitations, which is required by law to be specially pleaded. In this case the defendant pleaded the statute of limitations in addition to the plea of "not guilty," and, therefore, the position assumed does not apply.

Finding and judgment for defendants.