## No. 2113.

### CATHERINE SIDECK ET AL. *v.* JUAN DURAN ET AL.

1. MEXICAN GRANT—LAPSE OF TIME.—Titles fairly issued by the former government, prior to the revolution of 1836, to land near the line of the premium lands granted to the empressarios Power and Hewitson, which line, according to their colonial contract, was to run parallel with the coast, will not now, after the lapse of so many years, be disturbed by showing that the land was a few miles within or without the true boundary of said colony.

2. FORFEITURE OF GRANT.—Neither the settler under the colonization laws, who regularly acquired title from the government by grant, nor those holding under him, forfeited their right by ceasing to occupy the land granted.

3. COLONIZATION LAWS.—Under the provisions of the decrees of March 26, 1834, and of March 24. 1825, the colonial settlers, or those purchasing from them, were required to cultivate their land for the period of six years before they were released from the conditions, for non compliance with which the political authorities of the State might take from them their lands and titles.

4. RELINQUISHMENT OF TITLE.—There was no analogy between the relinquishment of title under the colonization laws of Mexico by a settler and the abandonment of title vested by patent from the State. Under the laws of Spain and Mexico, as they existed in 1834. the owner of land lost his title to it when he ceased to occupy it with the intention of relinquishing his claim to it. (Landes v. Perkins, 12 Mo., 256; and Clark v. Hammerle, 36 Mo., 639; followed.)

5. SAME.—A settler under the colonial laws of Mexico, who had already received a grant of land, in his application for other land after stating that his grant was issued without authority, and praying for another, used this language: "Saving my right to claim that which was given to me by mistake." *Held:*

   (1) He was not, under the laws in force, entitled to two grants,

   (2) The intention to relinquish the first grant, in the event title to land last applied for was extended, is manifest, and, on receiving title to the land last applied for, title to the first grant was extinguished.

   (3) Even at common law the settler would, under the facts stated, have been estopped from asserting title as against a subsequent grantee from

the government of the land thus relinquished, who obtained his title through the same officer who extended the second title and passed on the relinquishment of the first.

6. LIMITATION.—See this case for facts under which it was held that the acceptance of a grant by the contractors Power and Hewitson was a repudiation of any right thereto that might be claimed by a settler who was a citizen of Goliad, and provided for in their last contract; and that against such settler, or those claiming under him, the statute of limitations began to run from the date of actual occupancy.

APPEAL from Victoria.    Tried below before the Hon. H. Clay Pleasants.

*George P. Finlay,* for appellant, on the question of abandonment, cited Hamilton v. Menifee, 11 Texas, 744; Hancock v. McKinney, 7 Texas, 384; White v. Holliday, 11 Texas, 606; Swift v. Herrera, 9 Texas, 283; Edwards v. James, 7 Texas, 379.

That Sideck could not divest himself of title except by formal conveyance, he cited Dikes v. Miller, 24 Texas, 417; Harick v. Dodd, Texas Law Reporter, July 2, 1884, page 307; Jones v. Montes, 15 Texas, 351; Bowman v. Hicks, 22 Texas, 155; Holliman v. Peebles, 1 Texas, 673; Grassmeyer v. Beeson, 18 Texas, 753; Article 30, Decree of March 26, 1825, Coahuila and Texas.

That Power and Hewitson held in trust for Sideck, and the statute of limitations of ten years did not apply, he cited Howard v. Richeson, 13 Texas, 553; Ledyard v. Brown, 27 Texas, 393; Robertson v. Teal, 9 Texas, 349; Hamilton v. Menifee, 11 Texas, 718.

On estoppel, he cited Wallace v. Finberg, 46 Texas, 35; Hobby's Land Law, section 365, et sequitur; Timon v. Whitehead, 58 Texas, 295 and authorities; Blum v. Merchant, 58 Texas, 400; Bigelow on Estoppel, 476.

*Stayton & Kleburg,* for appellee, on their proposition that the land granted to Sideck was within the ten littoral leagues and void, they cited Goode v. McQueen, 3 Texas, 241; Edwards v. Davis, 3 Texas, 321; Republic v. Thorn, 3 Texas 499; Smith v. Power, 14 Texas, 146; Bissell v. Haynes, 9 Texas, 556; Wilcox v. Chambers, 26 Texas, 180; Smith v. Power, 23 Texas, 29.

On their propositions, as follows:

1.   In so far as the land claimed by plaintiffs in error conflicts with that grant to Power and Hewitson, plaintiff in error's claim is barred by limitation.

2.   The defendants in error who claim the league granted to

Manuel Blanco are purchasers in good faith for full value paid without any notice of the adverse claim and holding under deeds which are in no sense quit claims.

3. The declarations made by Sideck as to the invalidity of his title, his acceptance of other lands in pursuance to his expressed wish would and does estop him and his heirs from asserting any claim to the land granted to Manuel Blanco, who was entitled to a grant of land, which could and in all probability would have been granted to him in some other place but for the declarations and acts of Sideck, which induced him to apply for and receive the land in controversy.

4. The long silence and acquiescence of Sideck and his heirs in the claims of the adverse claimants, continuing for the period of forty-four years, is sufficient to raise the presumption, if it were necessary, that the claim now sought to be enforced had been, even if it were a perfect grant, in some legal manner divested.

5 The declarations of Sideck as to the invalidity of his title, his subsequent acts, the declarations made in the application by Blanco that Sideck had relinquished his claim, the action of the officers of the government, whose duty it was to extend titles, who are presumed to have known all the facts, in connection with the long silence and non-claimer of Sideck or his heirs, would be sufficient to rebut all pretense of notice at the time the rights of the defendants in error accrued, that Sideck or his heir asserted title, and would be sufficient to lead any reasonable, prudent person to believe that in fact Sideck had relinquished any claim he may ever have had.

They cited, as to estoppel, Timon v. Whitehead, 58 Texas, 295; Mayer v. Ramsey, 46 Texas, 371; Pickard v. Sears, 2 Ad. & E., 469; Bigelow on Estoppel, third edition, 387; DeCordova v. Smith, 9 Texas, 129.

GAINES, ASSOCIATE JUSTICE. This was an action of trespass to try title, brought by appellants as heirs of Antonio Sideck against Juan Duran and M. L. Labosky to recover a league of land in Refugio county. The suit was originally instituted in the county in which the land was situated, but was subsequently transferred to the district court of Victoria county. Before the change of venue, the surviving widow and heirs of John Welder and the heirs of James Power appeared and made themselves

parties defendants, alleged that the original defendants were their tenants, and pleaded their respective titles.

Appellants claimed under a grant issued to their ancestor, Antonio Sideck, on the fourth day of August, 1832, by the Alcalde of Goliad. The heirs of John Welder claimed a portion of the land sued for under a title extended to one Manuel Blanco on the twenty-ninth day of October, 1834, issued by the commissioner of Power and Hewitson's colony, and the other appellees, the heirs of James Power, set up title to the other portion of the premises in controversy under a grant of two and a half leagues of land conceded to Power and Hewitson, on the twelfth of October, 1834, as a part of the premium lands to which they became entitled under their contract.

The cause was submitted to the judge in the court below, without a jury, and the findings of his conclusions of fact and law appear in the record. There is but little controversy about the facts. We state such of them as we think necessary to be considered in the decision of this case. The land in controversy lies between the Guadalupe and the Nueces rivers, and is within the limits of the augmentation to Power and Hewitson's colony—if it be within ten leagues of the sea. On the twentieth day of April, 1831, Antonio Sideck made application on behalf of himself and a sister, as heirs of their deceased father, for the land. His application was favorably reported by the ayuntimiento with a statement that the grant applied for lay without the littoral leagues. The order granting the application dated July 27, 1831, directed that the commissioner of the colony to which the land belonged, or in case it belonged to no colony, the first or only alcalde of the municipality, should put the applicant in possession and extend the final title, which was accordingly done on the fourth of August, 1832, by the alcalde of Goliad.

On the twenty-seventh day of October, 1834, Sideck made application to the commissioner of Power and Hewitson's colony, stating that he was convinced that his previous grant was within the littoral leagues, and that the "judge" (meaning the alcalde) had no authority to make it, and prayed that the commissioner would issue to him "a formal title to land upon the same river" "according to the surveys recently made," etc. His application was favorably endorsed by one of the contractors, and a final title extended all on the same day to a league lying on the other side of the river from his original grant.

On October 29, 1834. Manuel Blanco (who also seems to have

been called Jose Manuel Blanco, and also Allen White), made application to the commissioner of Power and Hewitson's colony for the league in controversy, describing it as "the land which was owned by Antonio Sideck, and has been relinquished by him;" and on the same day final title was issued to him for the land applied for.

The court below finds as a matter of fact that the land now sued for lies without the littoral leagues. The correctness of this finding is questioned by appellees on the ground that the evidence does not support it, but we need not decide the point. If not within the colony of Power and Hewitson (which embraced the littoral leagues), it was certainly very near its boundary. This is shown by the fact that it adjoins, if it be not in conflict with, a portion of the premium lands granted to those contractors. It is now settled law that, on account of the difficulty of establishing the line called for in Power and Hewitson's contract to "run parallel with the coast," titles which have been fairly granted by the authorities can not be disturbed by showing, after this long lapse of time, that they may be "two or three miles" within or without the true boundary. (Hamilton v. Menifee, 11 Texas, 718; Ledyard v. Brown, 27 Texas, 293.)

It follows, we think, that the title extended by the alcalde of Goliad to Sideck was good, although it should now be found to be within the littoral leagues and very near the boundary of the colony, and that for the same reason that extended to Blanco was good, if the land be without and adjacent to that boundary, provided the league was vacant at the date of the latter grant.

The question, therefore, is as to the effect of Sideck's declarations contained in his application to the commissioner of the colony, and the title extended to him for another league of land in compliance with that application. It is contended, on behalf of appellants, that, by the grant to Sideck, dated August 4, 1832, he acquired the legal title to the land, and that it could only be divested by a conveyance or by a forfeiture, at the instance of the government, through its proper authorities. The first of these propositions must be conceded. It is established by numerous decisions of this court. (Swift v. Herrera, 9 Texas, 263; Jones v. Montes, 15 Texas, 351; Hancock v. McKinney, 7 Texas, 384; White v. Holliday, 11 Texas, 606; Hamilton v. Manifee, 11 Texas, 744.)

It is also held that a settler who has received the final title does not forfeit his right or that of those who have purchased

from him by merely ceasing to occupy the land. As to the latter, they took the land charged, with performance of the conditions attached to grants by the colonization laws.

The restriction upon alienation, which was removed by the thirty-sixth article of the decree of March 26, 1834, was contained in articles twenty-six and twenty-seven of the decree of March 24, 1825, and are as follows: "(26.) It shall be understood that the new settlers who shall not, within six years from the date of their possession, have cultivated or occupied agreeably to their class the lands that shall be granted them, have renounced the same, and the respective political authority shall immediately proceed to take back from them the lands and titles." "(27.) The contractors and military, in their turn, and those who have acquired land by purchase, can alienate the same at any time, provided the successor obligates himself to cultivate the same within the same time as was obligatory on the part of the original proprietor, likewise reckoning the time from the date of the primitive titles. The other settlers shall be authorized to alienate their land when they shall have completed the cultivation thereof, and not before."

The construction placed upon these provisions seems to be that the land must have been cultivated for the full term of six years before the title was released of its conditions. (Clay v. Cook, 16 Texas, 72.)

It follows from what we have said that in our opinion, while the settler to whom the final grant had issued, had a title not subject to lapse of itself by his failure to perform the conditions annexed to it; upon such failure it was liable to be defeated by the action of the "political authority." It would seem therefore, the question of the relinquishment of his title to land by a settler, under the colonization laws, as they existed at the date of the transaction now under consideration, is very different from that of an abandonment of title by one holding under a patent from the State. This latter question was discussed in Dykes v. Miller, 24 Texas, 417, but was not decided. Yet the opinion in that case shows that the court were strongly inclined to hold that, although there was no officer in the State empowered to accept a deed of relinquishment, yet when such a deed was executed by a land owner and deposited in the general land office, it would be deemed a divestiture of title of the land so relinquish so far as he was concerned.

The court then was treating of a title absolutely perfect in the

grantee, and applying to it the principles of a system of jurisprudence, which requires that conveyances of land shall be in writing.

The doctrine that title may be divested by abandonment has been recognized by the courts of other States. It is, however, doubtful whether the point has ever been directly involved in any authoritative decision. (3 Wash. on Real Prop., book 3, chap. 2, sec. 5; 4th ed., p. 61 *et seq.*)

But Sideck's application for the second grant, in which he declared void his title under the first, took place in 1834, and the effect of his act must be determined by the law then in force, and we think there can be no question that under the jurisprudence of Spain and Mexico the owner of land lost his title when he ceased to occupy it with the intention of relinguishing his claim upon it.

We extract the following from the Partidas: "If a man be dissatisfied with his immovable estate and abandons it, immediately he departs from it corporally, with the intention that it shall no longer be his, it will become the property of him who first enters thereon." (Partidas 3, title 4, law 50. See Hall's Mexican Law, p. 458, sec. 1489. See also Escriche's Dictionary "Abandono de Casas.")

The question of abandonment under the laws of Spain has come up in several cases in the Supreme Court of Missouri, where that system of jurisprudence prevailed until the adoption of the common law in 1816. In Landes v. Perkins, 12 Missouri, 256, the provision of "the Partidas," from which we have quoted, is construed, and it is held in effect that the relinquishment of possession with the intention of abandonment divested the title of the owner. (See also Clark v. Hammerle, 36 Mo., 639, and cases cited in that opinion.)

The judge who tried this case in the court below found in effect that Antonio Sideck abandoned his title to the land in controversy when he made application for the second grant, and that since that time neither he nor his heirs had ever set up claim to it until this suit was instituted in 1878.

The finding that Sideck abandoned his claim is assigned as error. But for one clause in Sideck's application for the second league, there would be no difficulty in deciding the question. In that application, after asserting that his former grant was issued without authority, and praying for another, he says (according

to the translation in the record), "saving my right to claim that which was given to me by mistake."

This admits of several constructions: 1, that he reserved the right to claim both grants in the event a second were conceded; 2, that he intended to maintain his claim to the original grant provided his application was rejected; 3, that he claimed the privilege of electing to take as his new grant either the land granted to him by mistake or one of "the surveys recently made upon the same river," as requested in the former part of his petition. Of these constructions, the learned judge in the court below adopted the last. The word "reclamar," in the original, which is translated "to claim," means also "to reclaim," and may indicate that the second supposed construction is the proper one. But it matters not whether the second or third be the true one, the result is the same. Either clearly manifests the intention of Sideck, in the event he received another concession, to abandon his former grant. That he did not mean to claim both, we think apparent, from the end he was attempting to attain.

He was not entitled to two grants, and his application is based upon the assertion of no such right. On the contrary, he sets up the nullity of the former grant as the reason which entitles him to another concession. It is to be presumed that if it was his purpose to claim both, in the event his application was granted, that he would not in such emphatic terms have alleged facts which showed the nullity of his first title. That such was not the construction placed upon the transaction at the time, is shown by the fact that two days after he obtained the concession applied for, Blanco made application for the land, describing it as that relinquished by Sideck, and that on the same day the same commissioner who issued the second grant to Sideck extended to him a formal title to the league. And further, although Blanco's title was of record, no claim was ever set up to the land, or acts of ownership exercised over it, or taxes paid upon it on part of Sideck or his heirs, for a period of more than thirty years.

It has been repeatedly held that the presumption which is ordinarily indulged in favor of the validity of official acts, applies with additional force to the acts of the officers whose duty it was to extend titles under the colonization laws of the former government. And in cases in which the construction of the laws then existing appeared doubtful, that put upon them by the contemporaneous authority has always been adopted by this

court. We think the commissioner must have considered that Sideck had abandoned his claim to the land in controversy when he extended the Blanco title, and that he was warranted in that conclusion.

For these reasons we are of the opinion that Sideck abandoned the land intending to relinquish his claim to it, and that, under the law then in force, he lost whatever title he then had, and that therefore his heirs can not recover it.

It is to be remarked that there are numerous decisions of the court holding that the settler or his purchaser did not forfeit his land by the mere fact of an abandonment of possession; but we think none can be found that, under the laws of Mexico, a title to land was not divested by ceasing to occupy it with the intention of relinquishment.

This is conclusive of the case. But it may be remarked that if the rules of the common law were to be applied to the transaction, that Sideck's conduct was such as to estop his heirs from setting up claim to the land against those claiming under Blanco. (Mayer v. Ramsey, 46 Texas, 371; Harrison v. Boring, 44 Texas, 269; Lamar County v. Clements, 49 Texas, 347.) The court below found, however, that only a part of the land was covered by the Blanco grant; but that as to that portion claimed by the defendants, the heirs of Power, their title was perfect by limitation of ten years.

It is contended, however, that according to the terms of Power and Hewitson's last contract, they were bound to issue title to Sideck to the land in controversy, he being as is argued, one of the citizens of Goliad, provided for in that contract (see Hamilton v. Menefee, supra), and that when they took a concession of the land, they held it in trust for him and that hence the statute would not run in their favor.

It is clear, however, that the acceptance of the grant by Power and Hewitson, was a repudiation of any right on the part of Sideck, and that the statute was put in operation as soon as the land was actually occupied by them or those claiming under them.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 27, 1887.

(Associate Justice Stayton did not sit in this case.)