WISE COUNTY COAL COMPANY v. JAY PHILLIPS ET AL.

Decided April 11, 1899.

**Public Lands—Pre-emption—Abandonment of Part.**

One claiming public land by pre-emption, a part of which is also claimed by another, is held to have abandoned his claim to the disputed part by obtaining a patent upon corrected field notes which exclude the contested part and include other land in its stead.

APPEAL from Wise. Tried below before Hon. J. W. PATTERSON.

*R. E. Carswell,* for appellant.

*J. E. Grigsby,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted in the District Court of Wise County by the appellees, as the only heirs of J. L. Phillips, deceased, to recover a tract of about eighteen acres of land claimed by appellant as the vendee of one W. T. Simmons.

Briefly stated, the facts are that on the 4th day of December, 1893, J. L. Phillips, through whom appellees claim, was an actual settler upon unappropriated public domain, and applied to the surveyor of Wise County for a survey not to exceed 160 acres, as a homestead donation. By virtue of this application said surveyor on December 20, 1893, made a survey. Both the application and survey evidence an intention to include the eighteen acres of land in controversy, and it is so found as a fact by the court below. This application and survey was duly filed in the General Land Office in June, 1894. The survey, however, evidences some uncertainty in its calls. The survey as apparently applied for and made was of a strip of land in the shape of an L, of which the base extended east and west about 1194 varas and was 108 varas wide, and the upright extended north and south about 3400 varas, being about 85 varas wide, said strip of land being surrounded on all sides by older surveys. The uncertainty in survey, if any, related to the upper or most northerly part of the survey, upon which is located the eighteen acres in controversy in this suit.

At the time of his application and survey J. L. Phillips was an actual settler upon the base or most southerly portion of the survey.

A few days after said J. L. Phillips' application and survey, about December 10, 1894, W. T. Simmons applied to purchase, and caused to be surveyed, together with other lands, the eighteen acres in controversy, which afterwards, to wit, on December 22, 1894, was patented to him by the Commissioner of the General Land Office.

J. L. Phillips continued to occupy and live upon the land applied for and surveyed by him until his death in June, 1896, during his lifetime having built some houses upon the eighteen acres in controversy and leased them to tenants, and made contracts of sale to some, agreeing to convey when patent was procured. After the death of J. L. Phillips appellees G. W. Bullock and wife, Ellen Bullock, who was a daughter of J. L. Phillips, and Jay Phillips, continued to live on the land.

In September, 1896, appellees caused a resurvey of the land originally applied for and corrected field notes thereof to be made, which corrected field notes included the land in controversy. This corrected survey also included a strip of land 260 varas wide and 1072 varas long, projecting west from the eighteen acres of land in controversy, containing about forty-nine acres. The south boundary line of this projected strip is an extension of the south boundary line of the W. T. Simmons survey, so that if the eighteen acres in controversy, patented to Simmons, be excluded therefrom, the survey would be somewhat in the form of a Z, thus:

The field notes as so corrected were forwarded to and filed in the General Land Office on October 1, 1896. The Commissioner of the General Land Office refused to patent the land in accordance with such corrected survey, because of the conflict with the W. T. Simmons survey.

Appellees thereupon again corrected the field notes of their survey, so as to exclude the conflict with the Simmons, to wit, the land in controversy, but again included the forty-nine acres strip above referred to. As so again corrected, the field notes were filed in the General Land Office on November 16, 1896, and appellees secured patent thereon, and thereafter instituted this suit to recover said eighteen acres of land.

The court below concluded as a mater of fact and as a mater of law that appellees did not, waive their right to the eighteen acres of land in controversy by the resurvey in 1896 omitting the land in controversy, and by procuring patent on such recorrected survey. In the second and third assignments of error it is insisted that the court erred in so holding, and we think these assignments are well taken.

Section 6, article 14, of the Constitution of 1876, provides that: "To every head of a family without a homestead there shall be donated 160 acres of public lands, upon the condition that he will select and locate said land and occupy the same three years, and pay the office fees due thereon." It will be noted that, to avail himself of the benefit of this clause of the Constitution, among other things, it is necessary that the homesteader shall not only select the land desired by him, but that he shall live thereon for the full period of three years.

It has been held that by selection and settlement he acquires a right that may be assigned. Johnson v. Townsend, 77 Texas, 640; Palmer v. Bennett, 81 Texas, 451. Article 3944, Sayles' Civil Statutes of 1887, in effect provided that in case a transfer had been made before he had completed his three years' residence, his assignee would have the right to complete the period of residence and acquire patent therefor. There, however, appears to be no corresponding right conferred by statute upon the heirs in the event the original occupant should die before the term of his residence is completed.

Article 3946 provides that when the original occupant or his assignee is dead, the patent shall issue to his heirs on application of the surviving widow, one of the heirs, or his legal representatives, and it may be that the statute having conferred the right to procure patent, the right to do all things necessary under the law in order to perfect title to the land would be implied, or that the term "assignee," as used in the statute, is sufficiently comprehensive to include the widow and heirs of a deceased homesteader. Under our law of descent and distribution and the history of the settlement of this State, we incline to this view of it. However, we do not find it necessary to decide the question, and we do not decide it.

At most, however, after the decease of J. L. Phillips prior to the three years occupancy required by the law, his heirs had but an equitable title, —the right to perfect their title by continuing such occupancy and performing other and necessary requisites thereto. It has often been held and expressly held in this State that one having an incipient right to land, as a location or survey or other merely equitable title, not perfected into a grant or vested by a deed, may abandon such inchoate right. Dikes v. Miller, 24 Texas, 418; Hollingsworth v. Holshousen, 72 Texas, 43; 3 Washb. on Real Prop., 5 ed., p. 67. See also Sideck v. Duran, 67 Texas, 257.

So that, while the heirs of J. L. Phillips after his death might have remained thereon and insisted upon the acquisition of the land as selected and surveyed by their ancestor, yet the statute evidently contem-

plates the right of selection. He is not required to select any particular part of the public domain, where in quantity it exceeds 160 acres, or even to take the full amount. He may select any number of acres, not to exceed 160, and we are of the opinion that appellees, having recorrected the survey made by their ancestor in such manner as to include land not originally appropriated, and having deliberately destroyed the integrity of the original survey and omitted the particular land in controversy, and having procured patent upon the field notes as so corrected expressly recognizing and calling for the Simmons survey, under the circumstances of this case it must be held to operate, as against a survey and patent on their face apparently valid, as an abandonment or forfeiture of the land in contrversy; and that appellees, not offering to surrender their patent or cancel the same so that patent might issue for the land originally located, can not go behind the field notes and patent upon which they have chosen to rely and show a right to the eighteen acres thus in effect abandoned by them.

To hold that appellees in this suit can now recover, it seems to us, would be to hold, in effect, that the Commissioner of the General Land Office could and should upon proper application issue to appellees a patent to the eighteen acres of land in controversy, while yet there is not on file in the Land Office any field notes that can be properly said to legally apply thereto. Rev. Stats., art. 4171.

If correct in this conclusion, it follows that the appellees showed no right of recovery on the trial below. This conclusion renders a decision of other questions raised unnecessary, and necessitates a reversal and rendition of the judgment in appellant's favor; and it is so ordered.

*Reversed and rendered.*