## WILLIAMS v. COOK et al. (No. 10839.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 15, 1924. Rehearing Granted March 7, 1925. Rehearing Denied May 2, 1925.)

1. Vendor and purchaser ⬤⟾231 (2)—Purchaser of patented school lands not affected with notice of grantor's deed recorded before application to purchase from state.

Purchaser of school lands from patentee is not affected with notice of latter's deed, executed and recorded before his application to purchase land from state under Act April 1, 1887 (9 Gammel's Laws, p. 883, § 8), as amended by Act April 8, 1889 (9 Gammel's Laws, p. 1079, § 8).

2. Adverse possession ⬤⟾47—Deed from patentee held not to constitute break in title under which patentee's heirs and assignee of mineral lease claimed.

Deed from patentee of school lands held not to constitute break in title, under which patent-

---

ee's heirs and assignee of oil and gas lease executed by him claimed for statutory period.

**3. Public lands ⊗═178(2)—Deed from one awarded school lands without authority void for want of consideration.**

Under Act April 1, 1887 (9 Gammel's Laws, p. 883, § 8), as amended by Act April 8, 1889 (9 Gammel's Laws, p. 1079, § 8), award of school lands in county organized after January 1, 1875, to applicant not residing thereon, was unauthorized, and subsequent deed thereof by him was void for want of consideration.

**4. Deeds ⊗═76—Covenant of warranty annexed to void deed or grant fails with latter.**

Covenant of warranty annexed to void deed or grant fails with latter.

**5. Abandonment ⊗═4—Grantee held to have abandoned rights under deed and covenant of warranty.**

Grantee not paying taxes nor claiming rents and other benefits under deed for over 30 years, and recognizing conflicting title in one or more of grantor's heirs, *held* to have abandoned any rights under deed and annexed covenant of warranty.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action by James R. Williams against M. H. Cook and others. Judgment for defendants, and plaintiff appeals. Affirmed.

R. B. Cousins, Jr., of Strawn, and Hickman & Bateman, of Breckenridge, for appellant.

Karl F. Griffith, of Dallas, Conner & McRae, of Eastland, Ritchie & Ranspot, of Mineral Wells, and Capps, Cantey, Hanger & Short, of Fort Worth, for appellees.

CONNER, C. J. The appellant, James R. Williams, instituted this suit on February 14, 1922, against M. H. Cook and others, by filing a petition in the usual form of trespass to try title and upon special pleadings, which we deem unnecessary to describe, to recover an undivided one-half interest in and to the west one-half of section 70, block 4, of the Texas & Pacific Railway surveys in Stephens county.

In answer, pleas of not guilty, the three and five years' statutes of limitation, and improvements in good faith were pleaded. The case was tried before the court without a jury and resulted in a judgment for the defendants, and the plaintiff has appealed.

In so far as we deem it material to state, the facts show that section 70 was a part of the public free school lands of Texas, and that George A. Cook, on the 28th day of January, 1890, made application to purchase the land in controversy in accordance with the act of the Legislature, approved April 1, 1887 (see volume 9, Gammel's Laws, p. 883, § 8), as amended by act approved April 8, 1889

(see volume 9, Gammel's Laws, p. 1079, § 8). An award was made to Cook, by virtue of this application, on January 30, 1890. Thereafter, to wit, on May 13, 1891, George A. Cook executed and delivered to appellant a general warranty deed, conveying or purporting to convey to appellant an undivided one-half interest in the said west one-half of section 70. This deed was duly recorded in the deed records of Stephens county on May 15, 1891. The deed recites a consideration of $1 in hand paid, and contains a covenant of general warranty.

It appears that the award made by virtue of the application of January 28, 1890, was forfeited on February 1, 1896, for nonpayment of interest for the year ending August 1, 1894.

George A. Cook again made application for the purchase of the land, and the same was again awarded to him on such second application July 6, 1896, as one having a prior right. This second award was forfeited August 3, 1900, for nonpayment of interest, but reinstated November 26, 1900, and patent was regularly issued to him on the last-mentioned award on July 11, 1901.

The wife of George A. Cook died in 1912, and he died in December, 1915, the surviving heirs of this union being three, of which the appellee M. H. Cook is one. Before the death of George A. Cook, he executed on March 9, 1915, an oil and gas lease to E. B. Ritchie and others, appellees herein. The lease was in the usual form of such mineral leases, and purported to convey the entire mineral rights, less the usual royalty for oil and a specified sum for gas that might be discovered. This lease was later purchased by the Lone Star Gas Company, one of the appellees herein, which began actual development of the land in March, 1918. At the time of the purchase by the oil and gas company named, it was without notice of the deed from Cook to Williams, except such as must be imputed by reason of its record, as hereinbefore stated. Other appellees are those claiming under and by virtue of conveyances from the heirs of George A. Cook and his wife, these heirs each purporting to convey an undivided one-third interest. The evidence further shows that George A. Cook during his lifetime, and his said heirs, in person or by tenant, retained actual possession of the lands in question until as late as the transfer to the oil and gas company on February 21, 1917.

Appellant testified as a witness upon the trial, but failed to show that the $1 recited as the consideration in the deed from Cook to him was actually paid. Nor did he state that at the time there was any other consideration for this deed other than his general statement that he and Cook owned the half section together, unless it is to be inferred

---

from the evidence of a witness tending to show that Cook and Williams had been partners in the ranching business and that they had dissolved partnership on or about the time of the execution of this deed, and that Williams, upon the request of Cook, had consented for Cook to retain possession. Appellant testified that he had worked for the T. & P. Coal Company, some 17 miles from the land in controversy, beginning about the year 1889, until 1899, and that for the next eight years he worked on a ranch a few miles away, and then removed to Mineral Wells, some 15 or 20 miles distant, for two or three years; and then in Rockport until 1912, when he went to California, returning in 1913. He failed to testify, and the evidence fails to show that during all of this time he made any claim for rents for the use of his alleged interest in the land in controversy, or that during said time he paid taxes on any part thereof, or at any time or place or to any person made any overt claim of ownership until after development of the land by the oil company. On the contrary, it was shown by letters written by Williams to M. H. Cook (the objection to which we overrule for reasons contained in the brief of appellees) that he, in effect, recognized M. H. Cook's interest in the land in question as an undivided one-third interest, and that in consultation with the appellee Ritchie in 1919, relating to the interest of M. H. Cook, he set up no claim of any interest in the land.

[1] As will appear from what we have said, the deed and warranty under which appellant, Williams, claims is anterior in point of time to the inception of the application and award by virtue of which the patent to George A. Cook issued. This being true, we conclude that appellee the Lone Star Gas Company and the other appellees, except the heirs of George A. Cook, were not affected with notice of the record of appellant's deed, and it being further true that such appellees had no actual notice of the existence of such deed or of appellant's claim, as is admitted, and that they paid valuable consideration for their several purchases, they must be held to be innocent purchasers for value, under the ruling in the following cases, to wit: Breen v. Morehead, 104 Tex. 254, 136 S. W. 1047, Ann. Cas. 1914A, 1285; Anderson v. Farmer (Tex. Civ. App.) 189 S. W. 508, writ refused; Bogart v. Moody, 35 Tex. Civ. App. 1, 79 S. W. 633; Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025; Texas Co. v. Barker (Tex. Civ. App.) 258 S. W. 864. In the Breen v. Morehead Case, it was distinctly held by our Supreme Court that a purchaser of patented school lands is not affected with notice of a conveyance of his grantor executed and recorded prior to the origin of the patented title. The other cases are equally as clear on this point, and all are applicable to the case we now have before us. It follows, we think, that, as against the appellee Lone Star Gas Company and all other appellees, except the heirs of George A. Cook, the judgment below must be in all things affirmed.

[2] In what we have said in disposing of the appellees, other than the heirs of George A. Cook, we excepted them for the reason that it appears that at last two of them, to wit, Mrs. Archie A. Luckie (née Cook) joined by her husband, Joe F. Luckie, and the wife of W. S. Warren, who, together with her husband, are also appellees herein, have probably retained their rights as surface owners and fractional parts of the one-eighth royalties reserved in the lease of their ancestors, and on the theory that these particular heirs remain as tenants in common with Williams after the death of their ancestor, George A. Cook, they would have rights necessary for disposition. From this statement, M. H. Cook, one of the heirs of George A. Cook, has been omitted for the reason that he, prior to the institution of this suit, conveyed his entire interest to W. S. Warren.

For the sake of clearness, and assuming the burden of being somewhat tautological, we make the following statement pertinent to the subjects now and further considered:

The undisputed facts in this case show that this case was filed on February 14, 1922; that no notice of the claim asserted by appellant in this suit was given to any of the appellees, unless such notice was reflected by the registration of the deed from Cook to Williams. Each of the appellees plead the three and five years' statutes of limitation, and a valid and binding award was issued to George A. Cook to the lands in controversy on July 11, 1901. Three children survived him and his wife, who died in 1915 and 1912 respectively.

After the death of Mrs. George A. Cook, her husband on March 9, 1915, executed an oil, gas, and mineral grant covering the lands involved to E. B. Ritchie, W. S. Warren, Geo. J. Watson, R. D. Hinkson, and J. H. Bennett, and which was filed for record September 14, 1915, when it was recorded. M. H. Cook, on March 22, 1916, executed a mortgage covering an undivided one-third interest in said lands. This instrument was filed for record and recorded January 1, 1917, and later duly released. M. H. Cook, by due conveyance dated January 30, 1917, sold to W. S. Warren "all that certain undivided one-third interest" in said land. This deed was filed for record and recorded February 15, 1917. February 16, 1917, the original grantees in oil and mineral lease above referred to and Archie A. Cook assigned the lease above referred to, to the Lone Star Gas Company. This assignment was filed and recorded February 21, 1917. This placed the legal title to the minerals with the right to use the surface of said lands in said company. On October 15, 1917, Archie A. Cook sold to W. S. Warren "an undivided one-third interest" in said lands, reserving the mineral rights.

This instrument was filed and recorded October 17, 1917. She sold on August 14, 1919, an undivided one-fourth mineral interest in said lands to Chas. E. Ochard. This deed was filed and recorded August 22, 1919, and on March 30, 1920, she sold a like mineral interest in said lands to R. L. Morton, trustee, the deed to which was filed and recorded April 17, 1920. On March 13, 1919, W. S. Warren sold an undivided one-third mineral interest in said lands to Geo. Sealy, trustee, the deed being filed and recorded March 15, 1919. January 17, 1920, W. S. Warren conveyed an undivided two-ninths mineral interest to M. H. Cook, the conveyance being filed and recorded the 24th day of the same month. He in turn, on the same day that he purchased, sold to W. M. Short, trustee, an undivided one-ninth mineral interest, the deed being filed and recorded January 22, 1920. W. S. Warren on April 9, 1920, conveyed an undivided one twenty-fourth mineral interest in said lands to Edward Dixon, the deed being filed and recorded August 8, 1920. Dixon purchased this for the Tampico Oil Fields, Limited, the beneficial owner. All these muniments of title were duly and timely recorded.

W. S. Warren testified that Cook used and occupied this land from about 1890, at least from the time of the dissolution of the Williams and Cook partnership up to 1915, and from the latter date up to about March, 1918, was used, and occupied by a Mr. Mitchell, a tenant of Geo. A. Cook. It was used for ranch purposes, and inclosed by fence. Geo. A. Cook paid the taxes up to the time of his death, from which time they were paid by W. S. Warren up to the date of the trial under a claim of ownership by purchase from the heirs of George A. Cook, deceased. He had exclusive possession and use of the same after he acquired the interest of the heirs, excepting during that period when the Lone Star Gas Company acquired possession in part for the purpose of developing the lands for the discovery of oil. During George A. Cook's lifetime he claimed to own said land, and W. S. Warren claimed to own the same thereafter, except those interests sold. The Lone Star Gas Company went into possession for the purpose of developing said land for the discovery of oil, and began actual development about March, 1918, dug a tank and moved a rig thereon to begin drilling, and did begin drilling that year.

On May 22, 1919, appellant wrote the following letter to M. H. Cook:

"Well, May, I find on my return to this country that your old home on Ioni is worth a lot of money, and that Walter Warren seems to be in full charge and reaping a fortune on it. He sold May's one-third royalties for $75,000, and kept his or rather your one-third interest and all the land. I say yours, May, for that is really what it is if you want it, for I find on investigation that if you will come back I can break that deed and contract he had with you, and you can get all your interest in the ranch back, and at the same time treat Walter perfectly square and right. Will you do it? It means a lot to you. Write me here at Ranger in care of Bobo & Bobo."

In other letters he virtually recognizes the title of M. H. Cook to an undivided interest, and that of W. S. Warren to a one-third interest. On April 24, 1919, he writes to Mrs. Joe Luckie (née Archie Cook) in which he admits that she owns title to one-third of the minerals. E. B. Ritchie testified that in 1919 appellant came to consult him as an attorney with reference to bringing a suit for M. H. Cook against W. S. Warren for the recovery of a one-third interest in the lands involved: that M. H. Cook had given W. S. Warren a general warranty deed, and it was with reference to the same that appellant conferred with him on behalf of M. H. Cook; that appellant never on any of the two or three occasions he talked to this witness made any claim to any interest in this land, but furnished him with the facts of M. H. Cook's title in a general way.

From the facts so stated, we have concluded that the deed from George A. Cook to the appellant, Williams, under which he claims, is not, under the circumstances, such an instrument, in character or effect, as to constitute a break in the title under which all the appellees are claiming, and hence that whatever right appellant may have ever had by virtue of his deed is barred, as appellees pleaded, under both the three and five years' statutes of limitation.

[3, 4] Moreover, the writer wishes to add that in his view the award to Cook, during the pendency of which his deed to appellant was made, was wholly void for want of authority in the commissioner of the general land office, under the acts of the Legislature by virtue of which the application and award was made, notice of which must be imputed to both Cook and appellant. Under the acts referred to, the commissioner of the general land office was not authorized to sell state school lands to other than actual settlers in counties organized later than January 1, 1875, it being shown by the certificates of the commissioner of the general land office that Stephens county was organized after January 1, 1875, and it being further shown that at the time of this award Cook had his home upon another portion of the school lands, and that the application for the half section in question was made as additional thereto, and for the further reason that there is a total want of consideration for the execution of the deed under which appellant claims, both in fact and in law, under the rulings of our Supreme Court in Lamb v. James, 87 Tex. 485, 29 S. W. 647, as explained and limited in the case of Rayner Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554. The

deed or grant to appellant being void, the covenant of warranty annexed thereto should fail with it under the principle applied in the case of Smith v. Ingram, 130 N. C. 100, 40 S. E. 984, 61 L. R. A. 878, and Altemus v. Nickell, 115 Ky. 506, 74 S. W. 221, 103 Am. St. Rep. 333, where it was said as to the deed there under consideration, that:

"If, then, the deed containing the warranty is void, every part of it must be ineffectual. To allow that the parties to a transaction prohibited as vicious might do by indirection and circumlocution that which they could not do directly, would be to bring a reproach upon the administration of the law," etc.

[5] Moreover, it seems to me that the invalidity and worthless character of the deed and covenant under which appellant now claims was recognized and accepted by appellant. His long-continued failure to share in the payment of taxes and to claim rents and other benefits under his deed, coupled with his undisputed recognition of title in one or more of the heirs of his grantor that was in antagonism and conflict with the title now claimed by him amounts in legal effect to an abandonment on his part of whatever right, if any, he ever had by virtue of the covenant of warranty now invoked. See Dikes v. Miller, 24 Tex. 417; Tiebout v. Millican, 61 Tex. 517; Wise County Coal Co. v. Phillips, 21 Tex. Civ. App. 293, 51 S. W. 331; Sideck v. Duran, 67 Tex. 256, 3 S. W. 264; 1 Cyc. page 6.

For the reasons given, it is ordered that the judgment below be in all things affirmed.