### TEXAS CO. v. BARKER et al.   (No. 10320.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 12, 1924.)

1. **Mines and minerals** ⬯74—**Evidence held to prove lessee's assignee an innocent purchaser.**

In lessors' action against lessee's assignee to cancel oil and gas lease on the ground that lessee procured the execution of the lease by fraudulent representations as to the terms thereof, evidence *held* to prove that assignee was an innocent purchaser for a valuable consideration without notice of the fraud.

2. **Mines and minerals** ⬯74—**Fraud held not available as against innocent purchaser of lease.**

An oil and gas lease conveying title to oil and gas in described land in excess of royalties reserved to lessors will not be canceled on the ground that lessee procured the execution thereof by fraudulent representations as to the term of the lease, after the lessee's assignment to innocent purchaser for valuable consideration, who took lease without notice of the fraud.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Mrs. Jennie Barker and another against the Texas Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

H. S. Garrett, of Fort Worth, for appellant.

T. B. Ridgell, of Breckenridge, for appellees.

R. E. Hardwicke, of Caracas, Venezuela, S. A., amicus curiæ.

DUNKLIN, J. The Texas Company has appealed from a judgment in favor of Mrs. Jennie Barker, who is joined by her husband in the suit, canceling an oil and gas lease on two tracts of land, aggregating 390 acres in Stephens county. The lease which was canceled was dated November 3, 1916, and was executed by plaintiffs in favor of the Producers' Oil Company, who transferred and assigned the same to the Texas Company. The suit was instituted against the Producers' Oil Company and the Texas Company, but the judgment recites that as against the Producers' Oil Company it was dismissed by reason of the fact that that company had been legally dissolved, and had ceased to exist as a legal entity.

The ground upon which plaintiffs sought a cancellation of the lease consisted of allegations that fraud had been practiced upon them by representatives of the Producers' Oil Company, which induced the execution of the instrument, and the judgment in plaintiff's favor implies that those allegations were sustained by proof, and the relief prayed for by plaintiffs was granted by reason thereof.

The sufficiency of the evidence to support that finding has not been challenged by any assignment of error; the only assignment of error presented being to the refusal of the court to sustain appellant's plea of innocent purchaser, which was filed in answer to plaintiffs' suit.

The lease, executed by the plaintiffs to the Producers' Oil Company, contains the following provisions:

"Know all men by these presents: That Jennie Barker and Jule Barker, husband and wife, of the post office of Breckenridge, state of Texas, hereinafter called lessor (whether one or more), for and in consideration of three hundred ninety & No/100 ($390.00) dollars, cash in hand paid, receipt of which is hereby acknowledged, do hereby lease unto Producers' Oil Company, a corporation of Texas, hereinafter called lessee, the following described land, situated in the county of Stephens, state of Texas: (Here follows description of land), for the purpose of prospecting for oil, gas, and sulphur, and the production of the same therefrom, together with the exclusive right of ingress and egress at any and all times to prospect, drill, mine, and otherwise operate hereunder, and the right to erect, maintain and remove all necessary or proper structures and appliances, including the right to pull the piping from wells, and to install, maintain, and remove all tanks and other means of storage and all pipes and other means of transportation; and, subject to the royalties hereinafter mentioned, there is hereby granted and conveyed to said lessee all of the oil, gas and sulphur in and under said land. (Here follows a statement of the royalties to go to the lessor, consisting of one-eighth of the oil which was to be delivered at the wells or to their credit in the pipe line, a stipulated sum of money per annum for each well producing gas exclusively; also a stipulated sum for each ton of sulphur mined and marketed from the land.)

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"If operations for the drilling of an oil or gas well are not begun on said land on or before the first day of November, 1917, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the credit of the lessor in the First National Bank of Breckenridge, Texas (which shall continue as the depository regardless of changes in ownership of the land), the sum of one hundred ninety-five and No./100 ($195.00) dollars, which payment or tender may be made by the check or draft of the lessee, and, however made, shall operate to confer on the lessee the privilege of deferring the time limit for 6 months from said date. Thereafter, in like manner and upon like payments or tenders of said amount, the time limit may be further deferred for additional periods of 6 months successively, provided always that this lease cannot be kept in force by such payments in the absence of drilling operations for a longer period than 5 years from the date last above set forth. But nothing in this paragraph contained shall obligate the lessee, against its wish or option, to make any such payment or to drill or otherwise carry on operations hereunder. And it is understood and expressly agreed that the consideration first recited in this lease, the down cash payment, and the obligation of the grantee contained in the next ensuing paragraph hereof, shall be held to support and sustain, not only the privileges granted to the date first written in this paragraph, namely, the date when this lease is to terminate unless an additional payment or tender is made, but also the lessee's option ·of extending that period from time to time and keeping this lease in force as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this instrument.

"If during the period of this lease or the extensions of the time limit for drilling, -and within 5 years from the date last above set forth, and prior to the discovery of oil or gas on said leased land, there shall bei drilled on adjacent land and within 200 feet of any line of said leased land, a well producing as much as 50 barrels of oil per day for 30 consecutive days, the lessee will, with reasonable diligence, begin and prosecute the drilling of a well on said leased land in a faithful effort to find and produce oil in paying quantities.

"After operations for the drilling of an oil or gas well shall have begun on said leased land, it shall not be necessary for the lessee to make any further payments in lieu of drilling operations as provided in the second preceding paragraph hereof in order to keep this lease in force; and during said period of 5 years drilling operations may be suspended from time to time, without terminating this lease, provided the lessee shall have paid or tendered, or shall then pay or tender, the amount hereinbefore mentioned for the then current period of 6 months, including the time of such suspension, and provided further that after such operations are so begun no such payment or tender shall be necessary when the operations are being carried on in good faith and the period of suspension is less than 30 days.

"If the lessee shall sink a well or shaft and discover oil, gas, or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for 10 years from such discovery, and as much

258 S.W.—55

longer as oil, gas or sulphur shall be produced therefrom in paying quantities; and, having so discovered oil, gas or sulphur in paying quantities, the lessee shall be exempt from loss or forfeiture of this lease, in whole or in part, except after judicial ascertainment that the lessee has failed to perform its duty and discharge its obligations hereunder and a reasonable opportunity thereafter to prevent such loss or forfeiture, and in event of final loss or forfeiture there shall be reserved to the lessee each producing well or mine with 10 acres of land surrounding the same to be designated by the lessee.

"No well shall be drilled nearer than 200 feet to any house or barn now on said land, unless by consent of the lessor, and nothing herein contained shall deprive the lessor of the full use and enjoyment of said land, subject to the privileges and estate hereby granted, and when requested by the lessor the lessee shall bury its pipe lines so that they will not interfere with cultivation.

"If the interest owned by the lessor in said land is or shall prove to be less than the entire fee the royalties and moneys herein provided for shall be delivered or paid to the lessor in the proportion only that the interest of the lessor bears to the entire fee.

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the 'covenants hereof shall extend to the assigns and successive assigns, but no change in the ownership of the land or the rentals or royalties, by purchase or otherwise, shall be binding on the lessee until it shall have been furnished with notice and proper evidence of such change."

That lease was duly transferred and assigned by the Producers' Oil Company to the Texas Company on February 21, 1918, and the lease, together with the transfer and assignment of the same, was duly recorded in the deed records of Stephens county.

The statement of facts contains the following:

"Mr. Ridgell (counsel for plaintiff): We will admit the payment of rentals, and the offer to pay the last one.

"Mr. Garrett (counsel for the Texas Company): I will read in evidence the payments of rentals, viz.: On October 26, 1917, by the Producers' Oil Company, $195, for the 6-months period beginning October 31, 1917. On April 26, 1918, by the Texas Company, $195, for the 6-months period beginning April 30, 1918. On October 19, 1918, by the Texas Company, $195, for the 6-months period beginning October 31, 1918. On April 22, 1919, by the Texas Company, $195, for the 6-months period beginning April 30, 1919. On October 21, 1919, by the Texas Company, $195, for the 6-months period beginning April 30, 1920. On October 25, 1920, by the Texas Company, $195, for the 6-months period beginning October 31, 1920. On April 18, 1921, by the Texas Company, $195, for the 6-months period beginning April 30, 1920 (evidently meaning 1921).

"It is agreed that all of the above payments were ·made as stated and that they were received by the depository bank and accepted by the plaintiffs.

"It is further agreed that the Texas Company on October 25, 1921, deposited with the bank named in the lease 'as depository the sum of $195, as the rental for the 6-months period beginning on October 31, 1921, and that the amount was received and accepted by the bank and is now on deposit in the bank to the credit of plaintiffs, and that' the plaintiffs have refused to accept the same. Also, that the Texas Company has not withdrawn the amount from the bank, and it is still there."

Defendant further offered in evidence the following agreement entered into between counsel:

"It is agreed that defendant, the Texas Company, purchased from the Producers' Oil Company, for a valuable consideration paid by the Texas Company to the said Producers' Oil Company, on the 21st day of February, A. D. 1918, and prior to the institution of this suit, the lease and leasehold interests covered by the lease executed by plaintiff Jennie Barker, and her husband, Jule Barker, to the Producers' Oil Company on November 3, 1916, described in plaintiffs' original petition herein, said lease being recorded in Book 54, pp. 318–321 in the deed records of Stephens county, Tex., and the said Producers' Oil Company did by proper deed of conveyance grant, bargain, sell, and convey said lease and leasehold interests to the Texas Company on said 21st day of February, 1918.

"It is further agreed that Judge Amos L. Beaty, president of the Texas Company, will testify that at the time that the Texas Company purchased said lease and leasehold interests from the Producers' Oil Company, as aforesaid, and at the times the Texas Company paid or offered to pay rentals to the plaintiffs under said lease, and at all times thereafter, the defendant, the Texas Company, had no knowledge of the facts alleged in plaintiffs' petition herein as grounds for plaintiffs' alleged right to cancel and rescind said lease, if such facts exist, but the Texas Company purchased said lease and paid and offered to pay plaintiffs' rental thereunder in good faith, believing that the said lease was in all things a valid and binding lease, obligation, and contract in accordance with the terms thereof.

"This agreement is made without agreeing that such facts alleged by plaintiffs are true or the contrary, and without prejudice to the rights of either party to offer competent proof of the truth of such facts or the contrary, and without prejudice to any legal rights of the plaintiffs herein to assert that as a matter of law the Texas Company could not be an innocent purchaser for valuable consideration paid of said lease and leasehold interests, and without waiving such rights, and likewise without prejudice to any legal rights of defendant to assert that as a matter of law the Texas Company is an innocent purchaser for valuable consideration paid of said lease and leasehold interests, and that said lease cannot be canceled or rescinded, and without waiving such rights."

On March 14, 1919, Mrs. Jennie Barker and her husband executed an instrument in writing, which was also signed by the Texas Company, correcting the description of the land as contained in the lease to the Producers' Oil Company, of date November 3, 1916, and reciting that it was executed "for and in consideration of the amount paid for said lease, the rentals received by us from the Producers' Oil Company and its assigns, and for the purpose of correcting the description contained in the aforesaid oil and gas lease." That instrument contained this further stipulation:

"Except as herein changed and amended the above-described oil and gas lease and all its terms and provisions are hereby ratified and confirmed, and the same shall remain in full force and effect as therein provided."

It was alleged in plaintiffs' petition that they had been induced to execute the lease by false and fraudulent representations made to them by the agents of the Producers' Oil Company that the lease was for a term of 5 years only, and that such were its terms; that prior to the execution of the instrument plaintiffs had orally agreed to execute a lease for 5 years but for no longer; that plaintiffs were old and uneducated, and did not read the instrument before executing it, by reason of the assurance given them at that time by the agents of the Producers' Oil Company that the lease was for a 5-year period only.

Mrs. Barker testified on the trial as follows:

"I have not got any education at all; but I can read and write, and I picked that up myself. I relied on the statements of the notary and the agent that this lease was for 5 years. You ask when I found out the difference. When the 5 years run out they sent the next 6 months' rent on the lease. That was the first I ever heard of such a thing; that it was not for 5 years. I did not take the rent, and told the First National Bank I would not take it, and stood right there and seen them send it back. I told them I would not receive it at all. I still refuse to accept it."

The statement of facts contains the following agreement between counsel for the parties:

"It is agreed between counsel that testimony of Mr. Barker as to when they found it was a 6-year lease will be the same as Mrs. Barker's."

[1, 2] We believe that the evidence recited above conclusively established appellant's defense that it was an innocent purchaser of the lease in controversy for a valuable consideration and without notice of the fraud practiced upon the plaintiffs by the agents of the Producers' Oil Company, if, as a matter of law, that lease conveyed such an interest in the land as would support that defense. And we are of the opinion further that the lease is sufficient to serve as a basis for that defense. We believe that any doubt of the correctness of the conclusion last stated, arising by reason of the decision of our

Supreme Court in National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, and many other decisions citing that one with approval, has been removed by the decisions of the same court in Deaton v. Rush, 252 S. W. 1025; Caruthers v. Leonard, 254 S. W. 779; Robinson v. Jacobs, 254 S. W. 309; Texas Co. v. Davis, 254 S. W. 304 and 255 S. W. 601; Munsey v. Marnet Oil Co., 254 S. W. 311, and Stephens County v. Mid-Kansas Oil & Gas Co., 254 S. W. 290.

The lease involved in the present suit contains specific language of conveyance of title to all the oil and gas in the land described, in excess of the royalties reserved to the grantors, and in that respect it cannot, in legal effect, be distinguished from the leases construed in the first 5 decisions last cited. The sixth case cited, Stephens County v. Mid-Kansas Oil & Gas Company, did not contain any specific language of conveyance, but was in terms a lease giving to the lessee the exclusive right to drill for oil and to appropriate to its own use all that might be produced over and above the royalties therein, which royalties were to be delivered to the lessor. Upon appeal it was insisted, in effect, that in the absence of specific language of conveyance of title to the oil and gas in place, the instrument was materially different from that construed in Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, and was a mere option to acquire title such as that shown in National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979. But, in disposing of that contention, Justice Greenwood, speaking for the court, said:

"Notwithstanding the distinctions attempted to be drawn in the decisions, we cannot conclude otherwise than that there is no real difference in the title conveyed, whether an instrument takes the form of a grant of the exclusive right to mine and appropriate all of a certain mineral (as in Benevides v. Hunt, supra), or takes the form of a demise of the land, for the sole purpose of mining operations, coupled with a grant of the exclusive right to produce and dispose of the mineral (as in this case), or takes the form of a grant of the mineral with the exclusive right to mine for, produce, and dispose thereof (as in Texas Co. v. Daugherty, supra). The results are substantially the same to all parties at interest, whether the one or other form of instrument be used. Why hold that instruments in different forms create different estates, where there is no difference in fact with respect to that of which each divests the grantor, his heirs or assigns, nor with respect to that with which each invests the grantee, his heirs or assigns?"

Following that announcement are citations of authorities with quotations therefrom in support of the conclusion announced, including the excellent recent work of Mr. R. E. Hardwicke entitled "Innocent Purchaser of Oil and Gas." And on page 66 of that work decisions of our Supreme Court, including

Hennessy v. Blair, 107 Tex. 39, 173 S. W. 871, Ann. Cas. 1916C, 474, are cited to show that the question whether or not the title purchased by one, who later relies on it to support his plea of innocent purchaser, is such an interest in land as will support that defense is to be determined by the written evidence of title by the vendor, without reference to his real interest in the land, as disclosed by extrinsic proof.

According to the decisions of our Supreme Court last cited, the lease in controversy in this suit conveyed an interest in the land subject to defeasance for forfeiture to pay rentals or drill a well in accordance with its provisions, and therefore it was sufficient to support the defense of innocent purchaser urged by appellant. Hence the contention of appellees to the contrary, based on the decision in the case of National Oil & Pipe Line Co. v. Teel, supra, is overruled.

As shown above, it was agreed by counsel for both parties on the trial that appellant paid a valuable consideration for the lease at the time it purchased the same from the original lessee. The testimony of Judge Amos L. Beaty, president of appellant company, that appellant had no knowledge of the fraud alleged in plaintiffs' petition at the time of said purchase, or at any time subsequent thereto when it paid to appellees the rentals stipulated, all in good faith and under the belief it had acquired a valid lease, was not controverted by any evidence whatsoever. On the contrary, his testimony was corroborated by such circumstances as the continued payment of rentals, after said transfer, by the execution to it by appellees of the corrected lease, and by the testimony of appellees that they themselves did not discover the alleged fraud until the expiration of 5 years next ensuing after the date of the lease to the Producers' Oil Company.

Such being the record before us, we conclude that appellant's defense of innocent purchaser of the lease is sustained, the judgment of the trial court is reversed, and judgment is here rendered denying appellees the relief prayed for in their petition.

And since appellees, without just cause, repudiated the lease at the expiration of the 5-year period next ensuing after its execution, and thereby denied to appellant its lawful rights thereunder, it is now here decreed that the lease is in full force and effect, the 6-years rental period, fixed by its terms to expire November 1, 1922, in the event of failure to pay rentals or to drill, is extended for a period of 1 year next ensuing from and after the date the judgment of this court shall become final, upon the terms stated in the lease.

It is further decreed that the rentals tendered and paid by appellant to the depository bank for the 6-months period beginning October 31, 1921, shall be in full satisfaction of rentals due for the first 6 months next en-

suing after the date this judgment shall ·become final, and that by payment of a rental in like amount on or before the expiration of that 6-months period, the lease shall be continued for the next ensuing 6 months. All other stipulations in the lease shall continue in full force and effect, subject to the extension above indicated. Archer on Oil and ·Gas, p. 546; McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859; Tex. Pac. Coal Co. v., Patton (Tex. Com. App.) 238 S. W. 202, and other authorities there cited; Stahl v. Van Vleck, 53 Ohio St. 136, 41 N. E. 35.

Reversed and rendered.