## Martin et al. v. Ohio Fuel Oil Company et al.

(Decided March 13, 1934.)

J. M. BOLLING and C. B. WHEELER for appellants.
COMBS & COMBS and KIRK & WELLS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On September 14, 1921, S. B. Martin and Mary Martin, his wife, executed and delivered to Grover Martin a twenty-year oil and gas lease on certain land in Floyd county. The lease was acknowledged by the lessors and recorded in the Floyd county clerk's office. By a writing dated December 8, 1921, which was also recorded in the Floyd county clerk's office, Grover Martin, in consideration of the sum of $125, sold and transferred the lease to the Ohio Fuel Oil Company. Thereafter all sums due in lieu of rentals, amounting to $62.50, each

six months were regularly paid to the Martins by the Ohio Fuel Oil Company up to March 14, 1926.

On September 26, 1925, Martin and wife brought this action against the Ohio Fuel Oil Company and Grover Martin to cancel the lease, on the ground that their signatures and acknowledgments were a forgery, and the further ground that by fraud of the lessee the term of the lease was fixed at twenty years instead of ten years, as agreed by the parties. In addition to a general denial and a plea of estoppel, the Ohio Fuel Oil Company pleaded that it was a bona fide purchaser for value without notice. On final hearing the petition was dismissed, and the title of the Ohio Fuel Oil Company to the oil and gas was quieted. The lessors appeal.

The evidence shows that the lessors signed and acknowledged the lease before their son, A. J. Martin, who was a school teacher and a notary public. According to S. B. Martin, he just gave a five-year lease. He could not see to read. The lease was not read to him, and his attention was not called to the fact that it was a twenty-year lease. He would not have leased for twenty years, and did not discover it was a twenty-year lease until four or five years after the lease was executed. He kept a copy of the lease at home until just before the suit was brought. According to Mary Martin, her husband told her in the presence of Grover Martin that he had agreed with Grover Martin for a five-year lease at 25 cents an acre, and Grover Martin said nothing. It was four or five years before they found out that the lease was for twenty years. A. J. Martin testified that he took the acknowledgment of his father and mother to the lease. He knew nothing about the terms of the lease and did not read it. The evening before the lease was executed he heard Grover Martin and his father discussing a five-year lease. John Martin, another son of appellants, testified he heard S. B. Martin and Grover Martin talking about a five-year lease, and that his father said he would not give it for any longer time. Casey Newsom, a grandson of appellants, deposed that he overheard a conversation between S. B. Martin and Grover Martin in which S. B. Martin said he would not lease for longer than five years, and that he could not hear what Grover said. He also heard Grover say he would like to have a longer time, but that his grandfather said it looked like five years was long enough. On the other hand, Grover Martin testified that he never

338

agreed to a five-year lease, and did not remember the lessor trying to get him to agree to a five-year lease. S. B. Martin did tell him that he had not been giving any twenty-year leases, but he told S. B. Martin that the company would be more liable to hold the lease if it was for a longer term. It further appears that the word "twenty" was printed and not written in the lease, and that there were no erasures on the lease. He also testified that he filled out an exact copy of the lease, and left it with the lessors. He stated further that the time he sold the lease to the Ohio Fuel Oil Company he was not the agent of that company, but was taking the leases for the purpose of selling 'them at open market; that he wrote the Ohio Fuel Oil Company a letter about having the leases to sell, and they sent Mr. W. M. Ziebold from Charleston, W. Va., to his home on Beaver; that Mr. Ziebold took the leases back to Charleston with him. He did not tell Mr. Ziebold of any defects in the leases, and did not know of any at the time. According to his best recollection, the lease was read over to appellants. He never heard S. B. Martin tell his wife that the lease was for five years, and he did not have an understanding with them that the lease was for a term other than twenty years. It was stipulated that O. J. Wilkinson would testify as follows: At the time the Ohio Fuel Oil Company purchased the lease from Grover Martin, he was the agent of the Ohio Fuel Oil Company in charge of its leasing department. Prior to the sale he received a letter from Grover Martin offering to sell the lease. Thereupon he sent W. O. Ziebold to Grover Martin's home to negotiate a purchase of the lease. Ziebold reported that Martin had agreed to take 25 cents an acre for the lease, and Martin was paid $125. At the time of the purchase the company did not know or have any knowledge of any defects in the lease, and did not know of any alleged agreement that the lease was to be for five or ten years, or for any other term than the twenty years mentioned in the lease, and had no knowledge or information concerning any of the alleged forgeries. It was further stipulated that W. O. Ziebold would testify as follows: After receipt of letter from Martin that he had some leases for sale he purchased the leases, including S. B. Martin's lease, for the price of 25 cents an acre. At the time he had no knowledge or information that the lease was to be for any term less than twenty years, or that the lease was a forgery.

If it had been shown that the signatures and acknowledgments of the lessors were a forgery, a different question would be presented. Fort Henry Oil Co. v. Rose, 199 Ky. 587, 251 S. W. 671. However, there was no proof of forgery, and not only did the lessors admit, but it was conclusively proved, that they signed and acknowledged the lease in the presence of their own son, who was a notary public. With that feature eliminated, the only ground on which a cancellation is asked is that by fraud of the lessee the term of the lease was fixed at twenty years instead of five. In view of the time consumed in the negotiations, and of the fact that the word "twenty" was printed and not written in the lease, and of the further fact that the son of appellants was present and took their acknowledgments, it may be doubted if the evidence of fraud was sufficiently clear and convincing to authorize a cancellation of the lease, even as between appellants and the lessee; but, however that may be, it remains to determine whether the claim of fraud is available as against the Ohio Fuel Oil Company. A bona fide purchaser of an oil and gas lease for valuable consideration without notice stands on a high plane in a court of equity, and is not affected by the fraud of the lessee in procuring the lease. Wells v. Shadoin, 202 Ky. 456, 260 S. W. 12; Texas Co. v. Barker (Tex. Civ. App.) 258 S. W. 864. The lease itself was on record and purported to be a lease for twenty years. In consideration of the sum of 25 cents an acre, or a total of $125, the lease was sold and transferred to the Ohio Fuel Oil Company. The evidence is uncontradicted that neither its agent, who negotiated the purchase, nor its agent in charge of its leasing department, nor the company itself, at the time of the purchase of the lease, had any knowledge or information of any agreement between the lessors and lessee that the term of the lease was five years, or any number of years less than twenty. In view of this evidence there can be no doubt that the Ohio Fuel Oil Company was a bona fide purchaser for value without notice, and that as to it the alleged fraud was not a ground for canceling the lease. It follows that the judgment of the chancellor was proper.

Judgment affirmed.